The opinion of the court (except of the Chief Justice, who, having been of counsel, did not sit in the hearing) was afterwards delivered by
Sedgwick, J.
This action is an application to the equity jurisdiction of the Court given by the statute of 1798, c. 77., made in "addition to the former act for giving remedies in equity. The plaintiff founds his claim upon a certain right, which he sets forth, as mortgagor of the premises described, to have the possession, in consequence of having redeemed them.
The contract between the parties was, 1. An absolute deed from the plaintiff to Ebenezer Weld, one of the defendants, on the 18th of September, 1794; and, 2. A bond of the same date by Weld to the plaintiff; by the condition of which, provided the deed and bond are parts of one transaction, it appears that the deed, instead of being what it purports to be, an absolute deed in fee simple, was in fact a part of a conditional contract which authorized Taylor to redeem the land conveyed, if it was such a contract as the law will carry into effect.
The condition of this bond, after mentioning the fact of the deed which had been given the same day, goes on to declare that, in consideration of that conveyance, Weld had signed to Taylor a note of hand for the sum of four hundred pounds. It then expresses the condition in these words, “ Now therefore if the said Weld,” &c. [as before stated].
As the answers of the two defendants are several, and as they might have had distinct rights against the plaintiff, it will be proper to distinguish the case, as it regards them respectively. [*116] * As it appears from the evidence, and is indeed agreed between the parties, that the plaintiff was at the time of the contract in debt and embarrassed, it is said that, from the face of the contract itself, it ought to be presumed that the deed from Taylor to Weld was intended to protect the property conveyed against its being taken by Taylor’s creditors.
It is obvious that, whatever construction may be given to the con tract in this respect, it cannot be taken advantage of by Weld: for if the transaction was fraudulent, Weld was a "party to the fraud. It is unnecessary therefore, so far as regards Weld, to consider the facts, from which it is said to be apparent that the transaction was fraudulent. And although Weld and a purchaser under him might be entitled to hold, if upon the whole transaction it appeared that the deed was sufficient to convey an absolute estate, yet, under the circumstances of the case, we must determine whether it was such, or whether it must be considered as a mortgage.
Again; it is said that it cannot be concluded that the deed of conveyance and bond were executed on the same day ; and if not, that the deed is not rendered defeasible by the bond; and the only remedy for the plaintiff, in case the condition of the bond has *87 been broken, is by an action upon it. That the deed and bond were executed on different days, it is said, ought to be inferred from their having been witnessed by different persons.
That the instruments were executed on different days is not, I think, to be presumed without further evidence than the facts before us. The deed from Taylor to Weld purports to have been executed on the 18th of September, and it was on that day acknowledged and registered. By the deposition of Mr. Vaughan, one of the subscribing witnesses to the bond, it purports to have been dated on the same day. This deposition has been filed more than a year in this Court, and no evidence has been produced or attempted, that the deed and bond were executed on different days. As the *bond is the deed of the defendant Weld, we do [ * 117 ] not think that it lies with him to say, under these circumstances, even if he could in any other ca'se which might be supposed, that the two instruments were executed on different days ; and we think that, from the evidence, we must take them to be parts of the same contract, and to be of even date.
It is further said, on the part of Weld, the defendant, that, admitting that the deed of conveyance and the bond were executed on the same day, the deed is not thereby rendered a mortgage. And the case of Newcomb and Bonham, reported in 1 Vem., is cited as an authority that must govern this case ; and it is argued that, by the principles established by that case, it is apparent that the deed in this case cannot be considered as a mortgage.
But by attending to that case, and admitting that in its fullest extent it is an authority, it is evident that the circumstances, which influenced the decision, do not exist in the case now before the Court. The circumstances to which I allude are the covenant in a certain 'event not to redeem, and the facts in evidence, extraneous of the written contract, to show that the premises conveyed were contemplated as a provision for one of the parties. And as we are perfectly satisfied that it was the manifest intention of the parties, that the deed of conveyance should by the bond be made a mortgage, and as we can discover no rule of law, nor any good reason, why it should not have that construction, we are all of opinion that it should be so considered.
It may be further observed, before we come to that part of the case, from which it was expected the greatest difficulty would arise, that it was certainly the intention of the parties, that if Taylor did what the condition of the bond specified as incumbent upon him to perform; if he gave up to Weld his promissory note to Taylor, paid Weld the amount of his own note to him, and saved him harmless from the recognizance he bad * entered into [*118 ] *88 on his behalf, that Taylor should have again the land, which he had conveyed to Weld merely to secure him in those respects And I do not perceive why such a contract might not be a fair one; nor why it ought not to be carried into effect.
Having disposed of the preliminary questions, it becomes necessary to determine whether the plaintiff is by law entitled to the remedy which he seeks in this case.
There were three things for which the land in this case was mortgaged : 1. As an indemnity for the recognizance. It is not pretended that Weld was ever damnified by that recognizance, nor that he is now exposed to any damage on that account. So far, then, the pledge is redeemed. 2. It was mortgaged to secure to Weld the four hundred pounds, which by his promissory note he had under taken to pay to Taylor. And, 3. The payment of Taylor’s note to Weld for twenty-three pounds.
'Now, it is proved, and indeed is not denied., that, on tbe 13th of July, 1799, Taylor tendered to Weld his own note, and the full contents of Taylor’s note to Weld. If these had been received. then every thing, for which the land was pledged, would have bee., fully satisfied, and nothing would have remained, for which WeiJ could equitably hold it. And as a tender and refusal must have the same effects as a delivery or payment, all right from that time, on the part of Weld, to hold the land, undoubtedly ceased, provided the conveyance operates as a mortgage; and if it does not, the plaintiff ought to receive a compensation for it. From the 13th of July, 1799, then, there can be no doubt that the land has been withheld from Taylor without any good or valuable consideration on the part of Weld; and that in equity and good conscience he ought either to restore the possession to Taylor, or to pay him for it.
The plaintiff claims to be reinstated in the possession of his land. The defendants say he must resort to his bond for a [*119] remedy; that his case is not within the statute * of 1785, c. 22., for giving remedies in equity, nor the additional act of 1798, c. 77., which acts alone provide for the relief which is 'sought by the plaintiff. And it is true that upon a right construction of those acts, and particularly the last, the controversy between these parties must be determined.
Antecedently to the enacting of the first of those two statutes, the law had provided for fixing a point of time, from which the mortgagor’s right of redemption within the three years allowed to him should commence, only by taking possession in virtue of a judgment of Court in an action brought upon the mortgage deed. By the first statute, which has been mentioned, another mode than that of talcing possession “ by process of law ” is provided, that is, “ by *89 open and peaceable entry in the presence of two witnesses.” The additional act, which provides the remedy now under consideration, enacts that where any mortgagee or vendee, claiming lands or tenements granted upon condition, by force of any deed of mortgage or bargain and sale with defeasance, or any person claiming and holding under them, have lawfully entered and obtained possession, or shall lawfully enter and obtain the actual possession of such lands or tenements for the condition broken; that the mortgagor, within three years after such entry, and not afterwards, may redeem the estate, by making or tendering to the mortgagee full satisfaction for all just claims he may have by virtue of the mortgage; and that thereupon it shall become the duty of the mortgagee to re-deliver the possession of the mortgaged premises to the mortgagor, and to make and deliver to him a deed of release thereof. And upon the refusal or neglect of the mortgagee to re-deliver the possession, and to deliver such deed, the act authorizes the kind of action brought by this plaintiff.
By the recital that has been made it appears, then, that it must be proved on the part of the plaintiff, 1. That the defendant did actually enter for the condition broken; *and, 2. [ * 120 ] That within three years after such entry the plaintiff made or tendered to the mortgagee full satisfaction for all the just claims he had by virtue of the mortgage.
In the first place, then, is there evidence that the mortgagee did enter into the mortgaged premises for the condition broken ? That he did enter it is agreed; and the only question upon this point is whether we have a right to conclude that the entry was for the condition broken.
It is said, and it is true that when a mortgage deed is made, conveying by words in prcesenti an estate in fee which may be defeated by the performance of a condition in futuro; the mortgagee has, immediately and before the condition broken, the freehold, and may at any time enter and obtain the actual possession; that conform-ably to this principle it was competent to the mortgagee in this case to enter immediately after the execution of the deed, and before a breach of the condition; and that therefore the mere proof of an entry does not certainly show, what is incumbent on the plaintiff, that the entry was for the condition broken.
To determine whether this objection is fatal to the plaintiff’s demand, it is necessary to attend to the facts in this case, as well as they respect the contract itself, as what has been since done in relation to it. It has already been observed that the mortgage was intended as security to the mortgagee in three particulars — to indemnify him as to the recognizance — to secure him as to the note *90 of four hundred pounds given to the plaintiff — and as collateral security for the payment of the note of twenty-three pounds given by the plaintiff to him.
The mortgagee was never damnified by means of the recognizance ; he therefore could not enter for the condition broken on that account. The note given by Weld to Taylor was never paid nor demanded. Here, then, neither was the condition [*121] broken. And it may be added * that there was no just claim on the part of Weld for entering into or holding the mortgaged premises, either for the recognizance, or for his note to Taylor. The note given by Taylor to Weld was for cash, and payable on demand. No actual demand was necessary. It was due immediately after it was given. Now, as there could be no equitable pretence for entering, either on account of the recognizance, or of Weld’s note to Taylor, and as Weld could honestly claim the possession to enforce the payment of Taylor’s note to him, and as he could fairly enter and hold only for that reason, and if he did enter for that reason, it was for the condition broken, it seems to me that, when he did enter, it must be understood that he entered for that reason. It does seem to me that, when there was an honest reason for which he might enter, it is right that we should presume that he did for that reason enter.
The deed from Taylor to Weld was dated the 18th of September, 1794. There is no evidence of any actual possession by Weld independent of Taylor until the 25th of October, 1798, when Weld made a lease of the premises. This, then, was the first at tuai entry; and it ought to be considered as an entry for the condition broken, were it not for the evidence of Driscol, the lessee. He testified that when he applied to Weld for a lease, he told him that the house standing on the premises did not belong to him, but to Taylor; and that Weld made the lease in pursuance of, and in conformity to, a contract which Driscol made with Taylor. Whatever therefore at that time was the possession of Weld, it was a possession in behalf of Taylor. At that time Weld neither had, nor claimed any possession by virtue of his deed; and there is no evidence that he had then entered into the premises in his own right.
But between this time, October, 1798, and May, 1799, Weld did claim in his own behalf; for by the testimony of Mr. [ * 122 ] Cutler, sheriff of Norfolk, it appears that at the * latter period Weld commenced an action against Taylor in the county of Norfolk, in consequence of which Taylor was committed to gaol by the sheriff. When the writ was delivered to the sheriff to be served, he was informed by Weld, that Taylor had a certain paper which if he would deliver up to the sheriff, he was directed *91 not to commit him. The sheriff does not particularly remember what paper Weld wished to obtain; yet as it is suggested that it was this bond of defeasance, and as we have no evidence of any other paper, in which Weld could be interested, except his own note to Taylor; and it cannot be supposed that he intended to coerce Taylor to deliver that, for such intention would be unjust, and too glaringly oppressive ; and it cannot be supposed that Weld would in such case attempt to make use of the agency of so respectable a man as the sheriff for so iniquitous a purpose, while he might deem himself authorized, for a final settlement of the transaction, to obtain the bond of defeasance, and thereby acquire an absolute estate, while he left his promissory note in the hands of Taylor, to secure him the purchase money agreed to be paid for the land. In this view we may safely conclude that the bond was the paper which was intended by Weld. And this conclusion seems strengthened, if possible, by the action, which was commenced by Weld on the 14th of September, 1799. This was, it is true, after the tender on the 13th of July, 1799; but it does not on that account the less let us into the views and intentions of Weld in these transactions. An account was annexed to the writ stating the demands of Weld against Taylor, and among them the note from Taylor to himself. By virtue of this writ the right of Taylor to redeem these mortgaged premises was attached. If from all this we may conclude, as I think we reasonably may, that the paper mentioned to the sheriff of Norfolk was the bond of defeasance, and this after Weld had made the lease to Driscol, there is sufficient * evi- [* 123 ] dence that he then was and claimed to be in actual possession for the condition broken.
Previous to this, that is, the commencement of the action of which Mr. Sheriff Cutler speaks, there is no evidence that Weld claimed to be in possession by virtue of his deed. His claim must therefore have commenced after the 25th of October, 1798, and before the delivery of the writ to the sheriff.
On the 13th of July, 1799, and within three years after actual possession taken by Weld, he being indemnified as to the recognizance, and being then in the actual possession, Taylor tendered him his own note, and the money due to him upon Taylor’s note. From that moment Weld had no possible right to retain the possession, but ought to have resigned it to Taylor, and given him a deed of release, as prescribed by the statute.
As respects the other defendant, Townsend, it is unnecessary to determine whether the answer he has made be sufficient to bar the plaintiff’s claim, provided the facts stated by him were supported by evidence, and particularly that he was a bona fide purchaser, without *92 notice that the plaintiff had an equitable right to redeem the estate which Townsend purchased from Weld; for from the privity between the two defendants, and the direct and positive testimony of three witnesses to the fact, we feel ourselves bound to hold that Townsend, previous to his purchase from Weld, had notice of the transaction between Taylor and Weld, by which the latter held the estate ; and it is very certain that a deed made under such circumstances cannot defeat the claim of the plaintiff.
On the whole, we are all of opinion that the plaintiff is entitled to recover against both the defendants ; but that the demands respectively, in relation to the subject of controversy, may be equitably adjusted between the plaintiff and the defendant Weld, it is necessary that an account be taken of the rents and profits of [ * 124 ] the premises * in controversy, together with all equitable demands of each upon the other. For which purpose; commissioners will be appointed by the Court, unless mutually agreed upon by the parties.
The commissioners, in their report, are to state particularly the items severally, for which an allowance shall be made by them; and also any claims by either, which the commissioners shall refuse to allow.
Nothing need be said as to the encumbrance on the premises by the levying of executions, as care will be taken by the Court, in making the ultimate decree, that justice in this respect shall be done.
A decree was accordingly made that the said premises were mortgaged'by Taylor in manner and form as by him is alleged in his bill. Commissioners were appointed, upon whose return the following decree was entered :—
“ Whereupon it appearing to the Court here that there is nothing due from the said Taylor to the said Weld on account of the said mortgaged premises, and that the rents and profits of the same in the hands of the said Townsend greatly exceed the expenses of repairing the same ; and it appearing further that the aforesaid sum of one hundred dollars, and no more, was due by the said Taylor to the said Weld on the thirteenth day of July, 1799, and that that sum was then tendered by the said Taylor to the said Weld, together with the promissory note of four hundred pounds given by the said Weld to the said Taylor, and also that the said Taylor has fully indemnified the said Weld as to the recognizance which he entered into on his behalf, as mentioned in his bond of defeasance aforesaid : It is decreed that the said Weld may take the said promissory note and the said sum of one hundred dollars out of Court; and that the said Taylor be restored to the possession of the said mortgaged *93 premises, except such parts thereof as were taken by the extent of executions against the said * Taylor, as men- [ * 125 ] tioned in the answer aforesaid of the said Townsend; and it is further decreed that the said Townsend and Weld do execute and acknowledge a deed or deeds of release to the said Taylor of the said mortgaged premises, except as taken by executions as aforesaid ; and that unless the same be done within thirty days from the 15th day of April, 1809, the said Taylor may have his writ of habere facias possessionem against the said Townsend and Weld for the possession of the said mortgaged premises, except as taken by executions as aforesaid, and for his costs to this time.”
B. Whitman, for the plaintiff.
Dexter, Sullivan, and Jackson, for the defendants
“ And the Court reserve any further hearing of this case upon the said report of the commissioners, as to the said rents and profits, and the making any further decree or decrees relative thereto, as justice may require.”