## Case No. 5,612.

### GORDON v. LEWIS et al.

### [1 Sumn. 525.] 1

Circuit Court, D. Maine.    May Term, 1834.

#### MORTGAGE—FORECLOSURE.

1. In order to foreclose a mortgage under the statutes of Massachusetts of 1788, c. 22, and of 1798, c. 77, the mortgagee must not only enter into the mortgaged premises after the condition broken in the presence of two witnesses, but his entry must be made known to them to

1 [Reported by Charles Sumner, Esq.]

be for the condition broken, and to foreclose the mortgage.

2. Until the statute of Massachusetts of 1818, c. 15, there was no legal means of levying an execution on an undivided part of a mill and its appurtenances, where the execution debtor was the owner of the entirety of the mill, although a mill privilege is incapable of severance. The prior statutes did not reach the case.

This is a bill in equity to redeem certain mortgaged premises, brought by the plaintiff [Jesse Gordon], as assignee of the mortgagor of the mortgaged premises, against the defendants [Archelaus Lewis and the Portland Manufacturing Company], as assignees of the mortgagee. The bill charges, that Joshua Webb, on November 1st, 1808, mortgaged the premises to Mark Haskell; Haskell on the 31st of August, 1816, assigned the mortgage to the defendant, Lewis; and Lewis assigned the same to the Portland Manufacturing Company, on the 3d of August, 1831. It further charges, that the mortgagor, Webb, on the 14th of April, 1812, conveyed the mortgaged premises to John Gordon; and that John Gordon, on the 23d of January, 1832, conveyed the same to the plaintiff. It then alleges a tender, &c. &c., and prays an account and redemption. The answers of the defendants admit the mortgage of the premises, excepting an old gristmill, which is said to have belonged to Jonathan Webb, and the assignment of the same mortgage, as charged in the bill. They require proof of the plaintiff's title; and then assert, as matter of defence, an entry into the premises after condition broken, for the purpose of foreclosure by Lewis, on or from and after the 16th of August, 1816, and open, and visible, and exclusive possession by him of the same for more than three years thereafter, and until his conveyance to the company, whereby he acquired an absolute title under such entry and foreclosure; and then denies the right to any account, &c. &c. At the hearing, two questions arose: (1) Whether there had been any entry for condition broken and foreclosure, as asserted in the answers; (2) whether the defendants had shown any title to the old mill, (called the Haskell Saw-Mill.)

Mr. Daveis, for plaintiff.

Mr. Longfellow and Mr. Greenleaf, for defendants.

Before STORY, Circuit Justice, and WARE, District Judge.

STORY, Circuit Justice. As to the first question, the court are clearly of opinion, that the proof does not establish any sufficient entry into the premises for condition broken, so as to create a statutable bar to the bill to redeem. The statute of Massachusetts of the 4th of November, 1788, c. 22 [Laws Mass. p. 199], declares, that all mortgaged premises shall be redeemable, "unless the mortgagee, or person claiming under him, hath by process of law, or by open and

peaceable entry made in the presence of two witnesses, taken actual possession thereof, and continued that possession peaceably three years." The statute of the 1st of March, 1798, c. 77 [Laws Mass. p. 577], declares, that where the mortgagee, &c. "have lawfully entered and obtained, or shall lawfully enter and obtain, the actual possession of such lands and tenements (the mortgaged premises) for the condition broken, the mortgagor, &c. shall have right to redeem the same at any time within three years after such possession obtained, and not afterwards." Taking these statutes together it is manifest, that an entry into the land by the mortgagee is not alone sufficient to make the time of foreclosure begin to run; but it must be after the condition broken, and for the condition broken. And as this is a statute operating as a bar to an equitable right, it is not to be extended by intendment. There must be a strict compliance with all the requisites to create the foreclosure. In our judgment, it is not sufficient, that the entry has been made after the condition broken; for that may well be by the mortgagee without any intent to foreclose. But the entry must be with the intent to foreclose, or, as the phrase in the statute is, "for the condition broken." Unless, then, the two witnesses, in whose presence the statute requires the entry to be made, can speak to the intent of the entry, as well as to the entry itself, that it was "for condition broken," it does not come within the purview of the statute. And in the present case, there is no proof, that it was with intent to foreclose the mortgage.

In the case of Taylor v. Weld, 5 Mass. 109, 119, it is explicitly admitted by the court, that it must be proved on the part of the mortgagee, that he did enter for condition broken. But it has been supposed, that that case establishes the doctrine, that an entry after condition broken is to be presumed to be for condition broken.[2] In our judgment, that case establishes no such doctrine. The court go into an elaborate examination of the facts of that case, and come to the conclusion, (with which we have nothing to do,) that, though in point of fact there was an entry after condition broken, that entry could not at that time be, under all the circumstances, deemed an entry for condition broken; but that the entry for the condition broken was at a later period. In our judgment, the mere proof of the fact of an entry after condition broken, is no proof of the purpose, for which it is made. The law requires the intent to be as notorious as the act. Equivocal acts, which admit of different interpretations, ought to be so construed as to preserve and not to defeat rights.

Then, as to the title to the Haskell Saw-Mill. It appears, that on the 5th of November, 1811, Archelaus Lewis and Stephen

Thacher, as executors of Peter Thacher, brought an action against Joshua Webb, and attached the mill on the writ. At that time Webb's only title on record was a deed of one undivided half of the premises from John Quimby, dated the 27th of May, 1806. On the 1st of November, 1808, he bought the other half from Solomon and Mark Haskell, to the latter of whom he mortgaged it for the payment of certain notes. But his deed from the Haskells was not recorded until long after the attachment, namely, in March, 1817. Judgment was duly obtained in the action; and the execution was extended, in December, 1812, on three fifths of the mill in common and undivided.

Under these circumstances, it is contended on the part of the defendants, first, that if Webb is to be deemed a tenant in common of one undivided moiety of the saw-mill only, according to his title on record at the time of the levy, then that levy is good at least for that moiety; secondly, if he is to be deemed in possession of the whole mill, so that the execution creditors (the executors) are to be deemed to have notice of his title to the whole mill, still the levy on the three fifths of the mill is ex necessitate rei good. The plaintiff contends, on the other hand, that the levy is altogether void, because at the time of the levy the debtor was seised of the entirety of the mill, and not of an undivided moiety thereof. This necessarily leads us to the consideration of the nature and mode of levies of execution on real estate according to the laws of Massachusetts, by which the present extent must be governed, it being before the separation of Maine. By the provincial act of 1692, it was declared, "that all lands and tenements belonging to any person, in his own proper right in fee simple, shall stand charged with the payment of all just debts owing by such person, as well as his personal estate, and shall be liable to be taken in execution for satisfaction of the same." The same provision was re-enacted in 1696. But the mode of levying the execution thereon was not pointed out. This was supplied, first, by an act in 1716, and afterwards by another act in 1719, which required the extent to be by appraisement in the mode prescribed under our present laws. And the same acts further provided, that when it so happened, that the real estate extended upon could not be divided and set out by metes and bounds, then the execution should be extended upon the rents of such real estate, and the tenants thereof be caused to attorn to the creditor and pay their rents to him accordingly.[3] In this situation our laws remained until the revision by the statute of the 17th of March, 1784 (St. 1783, c. 57), when it was further provided, that "when real estate of the debtor or debtors shall be held in joint

_____

2 See S. P., 12 Mass. 519, arguendo.

3 See Ancient Charters & Laws, pp. 216, 292, 401, 413, 423, and Colonial Act 1675, p. 143.

tenancy, in coparcenary, or tenancy in common, with the real estate of other persons, then the officer may extend execution on such debtor or debtor's real estate, held as aforesaid, or part thereof, describing the same with as much precision as the nature and situation thereof will admit, and give the creditor, &c., seisin or possession of such debtor or debtor's real estate held as aforesaid, or part thereof, to hold in common with the said other persons." So that this statute in effect provided for three classes of cases; first, levies on real estate in common cases, where the estate can be set off by metes and bounds; secondly, on rents, where the estate cannot be set off by metes and bounds, or other proper description, and there is a tenant in possession to attorn; and, thirdly, levies where the estate is held in an undivided share with others.

Now, the argument for the defendants is, that the act of 1696 still remains in full force, as to all cases of real estate, which cannot be set off in either of the modes thus prescribed, as is the case of a mill wholly owned by one person, where a part of it cannot be set off on one execution in severalty, as the privilege is incapable of a severance; and that the statute of Massachusetts of the 20th of February, 1819 (St. 1818–1820, c. 115), on this subject, is merely affirmative. But it seems to me, that the argument itself is difficult to be maintained. The act of 1696 merely declares in general terms the liability of real estate to be taken in execution. The act of 1719 expressly declares the manner in which the levy shall be made, when the creditor doth "think fit to levy upon the real estate of such debtor;" so that by necessary implication the extent cannot be in any other manner. And if this were even doubtful before the statute of 1783, c. 57, that statute being a revision of the whole subject, and in pari materiâ, operates as a virtual repeal of the antecedent laws. If, then, the levy of Lewis and Thacher on the Haskell Saw-Mill can be maintained at all, it must be maintained under the statute of 1783, c. 57. If, at the time of that levy, Joshua Webb had been seised of an undivided moiety only of the mill, notwithstanding the extent of a greater portion, namely, three fifths, it would have been good for the moiety. And so it was held in Atkins v. Bean, 14 Mass. 404. The difficulty is, that Webb was at that time owner of the whole mill under the purchase from the Haskells, though the moiety purchased of them was under mortgage. The question, then, is, whether by law an undivided part of a mill, of which the judgment debtor is sole owner, can be set off on execution. It is said, that it can, ex necessitate, because the privilege is incapable of severance, and a part of the mill cannot be set off by metes and bounds; and there is no inconvenience in setting off an undivided portion of the whole, describing the whole by metes and bounds. If the question had been wholly new, and untouched by legislation or decision, I must say, that I should have been greatly distressed by the argument. The statute certainly does contemplate the case of an extent of an undivided right or share of the debtor in real estate, or of part thereof; and there does not seem any very sound reason, why, if the debtor owns a moiety, one-quarter part may be set off on execution, and yet, if he owns the whole, one moiety cannot, where a separate portion of the whole is incapable of severance, and of being set off by metes and bounds. Nor does the language of the statute in its terms necessarily preclude such a construction. After declaring, that the creditor may, if he thinks proper, levy his execution upon the debtor's real estate, it proceeds to state, among other things, that the appraisers "shall set out such estate by metes and bounds," which words do not necessarily import, that the whole interest of the debtor in the lands shall be extended; but that the estate itself (that is, the land) shall be set out, that is, described by metes and bounds. And this interpretation derives strength from the succeeding clause, as to estates held in joint tenancy, &c. And the clause as to rents rather confirms than impugns it. It is: "And when it so happens, that the real estate extended upon cannot be divided and set out by metes and bounds, as before prescribed, or by the description before mentioned, then execution shall be extended upon the rents of such real estate." Now, an estate may as truly be said to be capable of a division and setting out by metes and bounds, by a division and set-off of an undivided interest in the whole, describing the metes and bounds of the whole, as by the division and set-off of an entirety of interest in a parcel of the whole, describing the parcel by metes and bounds. And even this is not required to be done in all cases; for undivided interests may be set off "by describing the same with as much precision as the nature and situation thereof will admit." And it by no means follows, that, because a levy may be on rents, there cannot be a levy by metes and bounds, at the election of the creditor; as the cases of Barber v. Root, 10 Mass. 260, and Roberts v. Whiting, 16 Mass. 186, show.

But the case is not left open to mere reasoning upon the intent and language of the statute. The very point arose in Partridge v. Gordon, 15 Mass. 486; and indeed it was, though (strangely enough) it does not appear in the report, the turning point of the cause. I have been favored with a record copy of the statement of facts, upon which the judgment of the court was given. From that statement it appears, that Joshua Webb was sole seised of the demanded premises, one portion of which was a saw-mill, which he mortgaged to the female plaintiff, but no entry had been made under the mortgage. Prior to this mortgage, the premises had been attached by certain creditors of Webb,

who afterwards levied their executions thereon, and the tenants claimed under the levies so made. On one of these executions a levy was made of seven eighths of the saw-mill; and on other executions levies were made on other parcels of the premises. The court decided, that the plaintiffs were entitled to recover the saw-mill, but not any other part of the demanded premises. So that the case must have turned upon the validity of an extent of an undivided part, where the debtor was owner of the entirety of a mill. This decision was made in May term, 1818. At the very next session of the legislature, by the act of February, 1819 (Act 1818, c. 15), it was provided, "that whenever a creditor shall think proper to extend and levy the same on any saw-mill, grist-mill, or other mill factory, mill privilege, or other real estate, which cannot be divided without prejudice to or spoiling the whole, and where the whole of such saw-mill, &c. is not necessary for the satisfying of such execution, the same may be extended, in manner prescribed by law, upon the same, or upon any undivided part thereof, which shall be sufficient to satisfy the same," &c. &c. It is impossible to entertain a doubt, that this almost contemporaneous legislation grew out of the decision in the case of Partridge v. Gordon [supra]. Under such circumstances it cannot be correctly deemed to be merely affirmative of the pre-existing law. Considering the decision, then, to be directly in point, it is a matter of local law conclusive upon this court, whatever doubts we might otherwise have been disposed to entertain.[4]

The circumstance, that there was at the time an existing mortgage upon one moiety, cannot vary the legal result; for Webb was, subject to that mortgage, owner of the entirety; and in point of law, the whole was capable of being set off on execution, as his property, although the creditors must have taken it subject to the mortgage. So is the doctrine in Warren v. Childs, 11 Mass. 222, and White v. Bond, 16 Mass. 400. Nor does it make any difference, that the deed to Webb was not recorded until long after the attachment and levy; for that was material only as to the rights of subsequent purchasers from the grantors; and completely vested the estate in Webb, as against the grantors themselves. So that the levy on the saw-mill, under which the defendants claim title, is wholly void; and it passed by the conveyance of Webb to John Gordon, and by that of the latter to the plaintiff.

Another objection was stated at the bar, that even if the levy of Lewis and Thacher, as executors, on the saw-mill was good, still they had no authority to convey the same, either under the will of their testator, or without a license of court under the general provisions of law, in cases of executions levied on real estate by executors and administrators. It is unnecessary to consider this point, because we have already decided the levy to be a nullity. I am authorized to say, that the district judge concurs in this opinion. There must, then, be a decree for a redemption of the mortgage, and for taking an account according to the prayer of the bill; and the cause must be referred to a master to take an account, and to make due report thereof to the court. Decree accordingly.

[For subsequent proceedings, see Cases Nos. 5,613 and 5,614.]

---

[4] The following is the statement of facts in Partridge v. Gordon:

Joshua Webb was sole seised of the demanded premises, at the times of the several attachments hereafter mentioned by his deed of mortgage, dated September 28th, 1812; being then so seised, conveyed the same to Susanna Webb, the tenor of which deed is as follows, namely: "I, Joshua Webb, &c., in consideration of ten thousand dollars paid by Susanna Webb, &c., hereby give, grant, bargain, sell, and convey unto the said Susanna, her heirs and assigns for ever, the following estate, to wit: the plot of ground, situate in said Falmouth, that Jonathan Webb in his life-time conveyed to the said Joshua, on which the said Joshua's brick house stands, with the said house and other buildings thereon. The following mills, and the privileges whereon they stand, situate in said Falmouth on the northeasterly side of Presumscot river, near the bridge over said river passing from Sacarappa to Windham: One saw-mill, and grist-mill within the same frame, standing on the shore of the river; the new single saw-mill, the new double saw-mill, and the old double saw-mill, all in a range, standing on the same falls with the saw and grist-mill first mentioned; to have and to hold the aforegranted and bargained premises, with all the privileges and appurtenances thereof to the said Susanna, her heirs and assigns, to their use and behoof for ever. And I do covenant with the said Susanna, her heirs and assigns, that I am lawfully seised in fee of the premises, that they are free of all incumbrances, that I have good right to sell and convey the same to the said Susanna, to hold as aforesaid, and that I will warrant and defend the same to the said Susanna, her heirs and assigns for ever, against the lawful claims and demands of all persons. Provided, nevertheless, that whereas the said Susanna and Joshua are administrators to the estate of Jonathan Webb, late of said Falmouth, deceased, intestate, and the said Joshua has taken into his hands most of the personal effects of said intestate; now if the said Joshua shall pay and dispose of said effects, according to law, by paying debts of said intestate, or distributing the same, as the judge of probate for said county of Cumberland may decree and order, and do and perform whatever pertains to his trust, as administrator as aforesaid, to keep the said Susanna harmless; then this deed shall be void, otherwise remain in full force." Acknowledged October 3d, 1812; recorded October 5th, 1812. But neither of the demandants ever entered under said mortgage, although the condition was broken before the commencement of this action. Prior to the execution of the deed from Joshua Webb to said Susanna, the demanded premises were legally attached at the suit of Eleazer Greeley v. Joshua Webb and Zacheus Hanniford, Samuel Torrey et al. v. Joshua Webb and Zacheus Hanniford, Ezekiel Walker v. Joshua Webb, Eleazer Greeley v. Joshua Webb, and Joseph Morse v. Joshua Webb, all bona fide creditors of said Joshua Webb; which suits were all entered at the proper courts, and such proceedings had thereon, that, at the circuit court of common pleas, holden at said Portland on the third Tuesday of November, A. D. 1812,

12. Webb mortgaged certain premises in 1808, to Haskell; Haskell in 1816 assigned his mortgage to the defendant Lewis; Lewis in 1831 assigned the same to the Portland Manufacturing Co. The mortgagor Webb in 1812, conveyed the mortgaged premises to John Gordon, who, in 1832, conveyed the same to the plaintiff. *Held*, that no decree can be made for the payment of the rents and profits to the plaintiff, until an opportunity has been given by supplemental proceedings for Webb and the other parties in interest to appear.

---

said Torrey and others recovered judgment against said Webb and Hanniford, for $3246.-18 damages, and $21.64 costs; on which judgment execution was issued in due form of law on the second day of December, 1812, and was on the same day delivered to Richard Hunnewell, Esq., sheriff of said county, who within thirty days after the rendition of said judgment, by order of the creditors extended the same on said mill and privilege, in manner and form as appears by the appraisers' and sheriff's return on said execution, which are as follows, namely: "Cumberland, ss. Falmouth, December 22d, 1812. 1st. We, the above named Benjamin Willis, Joseph Cross, Jr., and Nathaniel Partridge, having been sworn as above, have appraised and do hereby appraise and set off seven eighths of the new double saw-mill, on the north side of Presumscot river, and on the lower falls, with all the mill privileges belonging to the same at Sacarappa in Falmouth, as the property of Joshua Webb, of said place, with all the privileges and appurtenances thereto belonging, at the sum of thirty-three hundred and twenty-two dollars. The said premises having been shown to us by Nathan Kinsman, attorney to the creditors, as the estate of the within named Webb, to satisfy in full the within execution and charges. Benjamin Willis, Joseph Cross, Jr., Nathaniel Partridge. Falmouth, December 22d, 1812." (Next follows the return of the sheriff, which is omitted in this place.) The

appraisers were all duly appointed and sworn, and the several creditors seasonably received seisin and possession of the lands set off on their respective executions; and all the executions were duly returned into the clerk's office, and were duly recorded in the registry of said deeds in said county, within three months after the same were levied. It is admitted, that said Gordon had, prior to the commencement of this action, purchased by legal conveyances all the right, title, interest, and estate, which the several creditors aforesaid acquired by virtue of the levy of the several executions aforesaid. And it is agreed, that the court shall enter up such judgment, as ought by law to be entered on the foregoing facts. Luther Fitch, for Plaintiff. S. Longfellow, for Defendant.

Suffolk, ss. Supreme Judicial Court. March Term, 1818. Nathaniel Partridge and Wife v. John Gordon. Continued Nisi from Cumberland, June Term, 1817. Ordered, that the clerk of this court, for said county of Cumberland, make the following entry under said action in his docket in that term, namely: "Upon the facts agreed by the parties, it is considered by the court, that the said Nathaniel Partridge and wife recover seisin and possession of the double saw-mill and privileges described in the declaration, but not of any other of the premises therein described, and that they also recover their costs."