## MIDDLESEX COUNTY.

### ALEXANDER CAMPBELL *vs.* JOHN B. DEARBORN.

A bill in equity, to declare the plaintiff entitled to redeem land, which the defendant holds by an absolute conveyance from him, may be maintained upon parol proof that he bought the land with money borrowed from the defendant, and, though he executed his absolute deed intelligently, yet both parties understood that it was intended as security for the loan.

BILL IN EQUITY, filed July 12, 1869, to compel a reconveyance of land by the defendant to the plaintiff, on the ground that the plaintiff's conveyance of it to the defendant, although in form absolute, was in substance a mortgage.

The bill alleged that the plaintiff on June 11, 1866, agreed with Artemas Tirrill for the purchase by him from said Tirrill of a parcel of land in Charlestown, and at the same time Tirrill gave him a bond to convey the land at any time within three years from said June 11, upon the payment to him of $5500, the plaintiff to pay all assessments upon the land meanwhile; that since taking the bond the plaintiff has occupied the land; that in the early part of June 1869 he made arrangements to borrow the sum of $5500 from Charles J. Walker, in order to tender the same to Tirrell, and secure performance of his obligation to convey, within the time fixed in the bond; that on June 11, 1869, being disappointed in finding Walker, he met the defendant; that the defendant expressed regret that the plaintiff should be obliged to lose fulfilment of the bond through not having in time the money

required, and voluntarily offered to lend to the plaintiff the required amount, and the plaintiff accepted the offer as an act of friendship, as he supposed; that the defendant and the plaintiff went immediately to Tirrill and tendered to him said sum of $5500, and Tirrill thereupon delivered to the plaintiff his deed of the lan l in fee simple, in compliance with the bond, which deed was dated May 21, and was acknowledged before the defendant as a justice of the peace on said June 11, 1869; that upon leaving Tirrill the defendant said to the plaintiff that he ought to be secured for his loan in some way, and proposed that they should go to the defendant's attorney, to have the necessary papers prepared; that they thereupon went to the attorney's office, where the defendant and the attorney consulted together privately, and, without consulting the plaintiff, an instrument was drawn, and handed to him to sign, which upon reading he found to be drawn to convey the land in fee simple to the defendant; that the plaintiff objected to this form of conveyance, and desired to have a mortgage drawn instead, but was assured by both the attorney and the defendant that the instrument prepared would have the same effect; that, being ignorant of the legal effect of said instrument made under such circumstances, and relying on the statements of the attorney and the defendant, he on said June 11 executed and delivered said deed to the defendant; and that it was recorded in the registry of deeds at the same time with Tirrill's deed.

The bill also alleged that the plaintiff believed, and, from the manner and declarations of the defendant at the time, had every reason to believe, that the loan was prompted by the kindness of a friend, and was a gratuitous loan, and one which he was to immediately repay, and he accepted it accordingly; that on the same day he asked the defendant how soon the money must be repaid, and the defendant replied, " In a few days; " that the plaintiff at the same time said to the defendant that he had arranged for a permanent loan on the land and thought the matter could be settled on the next day, June 12; that on said June 12 Charles J. Walker, who had agreed to lend the plaintiff $5000 upon a mortgage on the land, was not ready to do so, as his attorney desired

more time to examine the title, and the plaintiff went to the defendant and stated the occasion of delay, and asked him to be ready to receive the money advanced and execute a deed conveying the land back to the plaintiff the next Monday ; that the defendant replied that he was going to Philadelphia on that day, but would settle the matter upon his return, which would be about June 17 ; and that at this interview, the plaintiff, feeling very grateful to the defendant for what he had done, suggested that he was disposed to pay him for his trouble in the premises, but the defendant replied, " Never mind now, we will make that all right," from which the plaintiff inferred that the defendant would make no charge for the loan.

The bill further alleged that on the 17th, 18th and 19th of June the plaintiff endeavored to find the defendant and repay his loan and obtain his deed, but was unable to find him ; that on the 21st of June the plaintiff saw the said attorney of the defendant, who had told him that the attorney was authorized to settle the matter, and said attorney informed the plaintiff that the defendant would not reconvey the land unless he was paid the sum advanced and $500 besides for the use of the money, whereat the plaintiff was greatly astonished and so stated to the attorney ; that the plaintiff afterwards saw the defendant, and objected to the charge, and gave him to understand that he supposed the loan to be gratuitous, but rather than have any ill feeling he would pay $250 ; that the defendant refused to accept that sum ; and that the plaintiff has been desirous of obtaining a reconveyance of the land, and has tendered the defendant the said sum of $5500 with legal interest from the time of the loan, and has also tendered a deed reconveying the land to the plaintiff, to be executed by the defendant ; but that the defendant refused to accept the tender and to execute the deed.

The prayer was " that the plaintiff may have proper relief in the premises ; that an account may be taken of what, if anything, is due to the defendant for principal and interest on said loan ; that the plaintiff may be permitted to redeem the land, he being ready and willing, and hereby offering, to pay what, if anything, shall appear to be due in respect to said loan and interest ac-

Campbell *v.* Dearborn.

crued ; and that the defendant may be decreed to convey the land to the plaintiff in fee, free from all incumbrances made by him or any person claiming under him, and may be restrained from making any sale or conveyance thereof to any person or persons pending this bill."

The defendant, in his answer, denied that he ever made or offered to make any loan to the plaintiff; alleged that, on the contrary, he refused a request of the plaintiff for a loan ; and further alleged that " the defendant agreed to pay Tirrill the said sum of $5500 for the premises described in the bill, provided the title to said premises should stand in the defendant's name," and the plaintiff agreed that immediately on payment of the sum to Tirrill the land should be conveyed in fee simple to the defendant, " and the plaintiff should not have any interest or title thereto ; " that thereupon the defendant paid the $5500 to Tirrill, and Tirrill executed and delivered to the plaintiff a deed of the land ; that the plaintiff did not have any title or interest in the purchase money or any part thereof, but the whole of it was property of the defendant ; that the land was not purchased of Tirrill for the benefit of the plaintiff, " neither did the defendant agree to purchase it for the benefit of the plaintiff, but for the use and benefit of the defendant ; " that by said purchase the equitable title to the land was vested in the defendant ; and that the plaintiff, in pursuance of his said agreement, did convey the land to the defendant in fee simple, " for the purpose of vesting both the legal and equitable title in the defendant ; " that the agreement between the plaintiff and the defendant, that the plaintiff should make such an absolute conveyance, and no other, was fair and distinct ; that " before and at the time of said payment to said Tirrill " the defendant refused " to lend the plaintiff said money, and to allow the plaintiff to have any interest in said money or the premises purchased therewith ; " and that the plaintiff's deed was read in his presence and hearing before he executed it, and he was then and there informed that it was an absolute conveyance and that he thereby ceased to have any interest whatever in the land.

The answer also alleged that afterwards, and as an independent transaction, the defendant at the plaintiff's request orally agreed to reconvey the land to him for the consideration of $6000 to be paid on June 18, 1869, together with such charges as the defend- ant should make for his expenses incident to the several convey- ances; that although the defendant then well knew, and still insists, that this agreement had no legal force or effect, for the reason that it was not in writing, yet on the day named he was ready and willing to perform his part of it, but the plaintiff neg- lected and refused to perform his own part or pay any sum what- ever, and thereupon the defendant considered himself released from all obligations to the plaintiff; that on June 19, 1869, he made another oral agreement with the plaintiff to reconvey the land to him for the sum of $6000, together with such expenses as the defendant had incurred by reason of said conveyances, pro- vided the agreement should be carried into effect forthwith, and the plaintiff then and there agreed to pay said sum; that the defendant on the same day executed a quitclaim deed, with the usual covenants, conveying the land to the plaintiff in pursuance of this agreement, and has repeatedly tendered this deed to the plaintiff; but that the plaintiff refused to comply with the agree- ment, and to pay the expenses incurred by the defendant in the premises; and that the defendant " now and always has denied that the plaintiff had any right to or interest in said premises, except such as he may have acquired under said parol agreements made subsequently to and independently of the conveyance" from the plaintiff to the defendant.

The answer then denied " that the defendant, or any one in his behalf, or at his request, or with his knowledge, ever made any representations or intimation to the plaintiff that the convey- ance of the plaintiff to the defendant was or had the effect of anything but an absolute conveyance in fee simple;" alleged " that the plaintiff well knew the contents and the legal effect thereof, and the same was fully explained to and understood by the plaintiff before the execution thereof, and no assurances or intimations were made, at or before the execution or delivery thereof, that the land would be reconveyed;" denied " that the

Campbell *v.* Dearborn.

plaintiff has ever tendered to the defendant the amount paid by him and interest thereon, or any other sum as alleged ; " set up the statute of frauds " in answer to the several averments of con-tracts, agreements, promises and trusts concerning the premises with, to or for the benefit of the plaintiff in the bill contained, and to so much of the bill as sets forth any pretended contract, agreement, trust or confidence between the plaintiff and the de-fendant, or as seeks any relief or discovery, of the defendant, of or concerning any pretended contract, agreement, trust or confi-dence between the plaintiff and the defendant, touching the land or premises mentioned in the bill, or any part thereof ; " denied " that the defendant, or any person thereunto by him lawfully authorized, did ever make or sign any writing whatsoever, of or containing any such contract, promise, agreement, grant or dec-laration with, to or for the benefit of the plaintiff touching the said land, or creating any estate or interest therein, or creating or declaring any trust respecting the same, in or for the benefit of the plaintiff ; " and finally denied all the plaintiff's allegations which were not above expressly admitted.

The plaintiff filed a general replication, and the case was heard by *Colt*, J., who made the following report thereof :

" The plaintiff was the only witness in support of his case, and testified substantially to the facts stated in the bill. The defend-ant testified in substance to the facts stated in his answer, and was confirmed in the main part of his evidence by the testimony of the attorney who prepared the deed from the plaintiff to him, but who also testified more fully to what was said between the parties at his office at the time the deed was executed. The wit-nesses appeared to me to be equally entitled to credit.

" I find as a fact, that the deed to the defendant was executed by the plaintiff intelligently, and not by accident or mistake ; and that no fraud was practised to procure its execution, other than may be inferred, if any, from the facts testified to and here found by me. I find, from all the circumstances surrounding the transaction, and from the acts and declarations of the parties at the time, that the plaintiff believed, and had reason to believe, that the payment made to Tirrill was made to prevent a forfeit

ure of the plaintiff's rights under the contract, as a friendly act on the part of the defendant, with a view to give him further time to raise the money due thereon, and that the defendant would within a few days, on being repaid the purchase money and a compensation for his trouble, reconvey the same to him. It appeared that no definite time was named for the repayment, and no definite amount was fixed as compensation; and that the defendant refused to take a mortgage instead of an absolute deed, insisting upon the ownership of the property, and the right to charge what he had a mind to for his services, in case he should reconvey.

"I report the case for the consideration of the full court, such order or decree to be entered as law and justice may require."

The pleadings were made a part of the report, and the case was argued in writing for the plaintiff, and orally for the defendant, in January 1871, and was decided in September 1873.

*G. A. Somerby, G. B. Bigelow & S. C. Darling,* for the plaintiff.

*W. S. Gardner,* for the defendant.

WELLS, J. Regarding the money paid to Tirrill for the land as the money of the plaintiff, by loan from the defendant, there is still no resulting trust in favor of the plaintiff arising from the whole transaction. A deed was taken to the plaintiff, according to his equitable interest; and he thereupon conveyed to the defendant by his own deed. The recitals and covenants of that deed preclude him from setting up any trusts by implication, against its express terms. *Blodgett* v. *Hildreth,* 103 Mass. 484. His agreement with the defendant for a reconveyance cannot be enforced as a contract for an interest in lands; Gen. Sts. *c.* 105, § 1; nor will it create an express trust; Gen. Sts. *c.* 100, § 19. The question then is, Can the deed be converted into a mortgage, or impeached and set aside, or its operation restricted, upon any ground properly cognizable in a court of chancery?

This question was somewhat discussed, though not decided, in *Newton* v. *Fay,* 10 Allen, 505. Some suggestions were made as to the bearing of the statute of frauds upon it, in *Glass* v. *Hulbert,* 102 Mass. 24. For the reasons there suggested, we do not

regard the statute of frauds as interposing any insuperable obsta-
cle to the granting of relief in such a case; because relief, if
granted, is attained by setting aside the deed; and parol evi-
dence is availed of to establish the equitable grounds for impeach-
ing that instrument, and not for the purpose of setting up some
other or different contract to be substituted in its place. If proper
grounds exist and are shown for defeating the deed, the equities
between the parties will be adjusted according to the nature of
the transaction and the facts and circumstances of the case;
among which may be included the real agreement. It does not
violate the statute of frauds, to admit parol evidence of the real
agreement, as an element in the proof of fraud or other vice in the
transaction, which is relied on to defeat the written instrument.

What will justify a court of chancery in setting aside a formal
deed, and giving the grantor an opportunity to redeem the land,
on the ground that it was conveyed only for security, although no
defeasance was taken, is a question of great difficulty, and one
upon which there exists a considerable diversity of adjudication,
as well as of opinion. In Story Eq. § 1018, it is stated in gen-
eral terms to be " fraud, accident and mistake." In 4 Kent Com.
(6th ed.) 142, 143, it is laid down that " parol evidence is admis-
sible in equity, to show that an absolute deed was intended as a
mortgage, and that the defeasance was omitted or destroyed by
fraud, surprise or mistake."

" It is determined, on the statute of frauds, that, if a mortgage
is intended by an absolute conveyance in one deed and a defeas-
ance making it redeemable in another, the first is executed, and
the party goes away with the defeasance, that is not within the
statute of frauds."    *Dixon* v. *Parker*, 2 Ves. Sen. 219, 225.
Similar declarations are to be found in *Walker* v. *Walker*, 2 Atk.
98, *Joynes* v. *Statham*, 3 Atk. 388, and *Maxwell* v. *Montacute*,
Pre. Ch. 526; and adjudications in *Washburn* v. *Merrills*, 1 Day,
139, *Daniels* v. *Alvord*, 2 Root, 196, and *Brainerd* v. *Brainerd*,
15 Conn. 475; and see Story Eq. § 768.

This indeed is only one form of application of the general rule
of equity, that one, who has induced another to act upon the sup-
position that a writing had been or would be given, shall not take

---

---

advantage of that act, and escape responsibility himself, by plead-
ing the statute of frauds on account of the absence of such writ-
ing, which has been caused by his own fault.   Besides the cases
cited in *Glass* v. *Hulbert*, 102 Mass. 24, see *Bartlett* v. *Pickers-
gill*, 1 Eden, 515 ; *S. C.* 1 Cox Ch. 15 ; Browne on St. of Frauds,
§ 94.   But this principle will not help the plaintiff here, because
he does not allege that any defeasance was intended or expected ;
and it is found by the report that the deed " was executed by the
plaintiff intelligently, and not by accident or mistake, and that
no fraud was practised to procure its execution, other than may
be inferred " from the facts stated.

From those facts, and from the bill and answer, we think these
points must be taken to be established, to wit, 1st. that the plain-
tiff had purchased the parcel of land in controversy and held a
contract from Tirrill for its conveyance to himself upon payment
of the sum of $5500 ; 2d. that the money was paid to Tirrill,
and the land conveyed by Tirrill to the plaintiff, in fulfilment
of that contract ; 3d. that the money was advanced by the de-
fendant to the plaintiff as a loan, and the deed from the plain-
tiff to the defendant was given by way of security therefor.   The
report finds, " from all the circumstances surrounding the transac-
tion, and from the acts and declarations of the parties at the time,
that the plaintiff believed and had reason to believe " this to be
the case.

The defendant, in his answer, does not pretend that he ever
made any contract, either with Tirrill or the plaintiff, by which
a price was agreed upon to be paid by him as and for the pur-
chase of the premises for himself.   His only allegation to this
point is, at most, indirect and equivocal.   He denies that said
estate was purchased of Tirrill for the plaintiff's benefit, " neither
did this defendant agree to purchase it for the benefit of the
plaintiff, but for the use and benefit of the defendant."   This is
followed by an argumentative assertion of equitable title acquired
as a resulting trust from payment of the purchase money, and
that the deed from the plaintiff was given " for the purpose of
vesting both the legal and equitable title in the defendant."   He
does allege that he " agreed to pay Tirrill the said sum of $5500

for the premises described in the bill, provided the title to said premises should stand in the defendant's name." He alleges, with sufficient fulness and minuteness, that he refused to make a loan of the money to the plaintiff both " before and at the time of said payment to said Tirrill," and refused " to allow the plaintiff to have any interest in said money, or the premises purchased therewith," and that it was agreed that the premises should be conveyed in fee simple to the defendant, " and the plaintiff should not have any interest or title thereto." He further avers " that, before the plaintiff signed and executed his deed to this defendant, said deed was read in the presence and hearing of the plaintiff, and he was then and there informed that the same was an absolute conveyance, and that he ceased thereby to have any interest whatever therein." Taking the facts to be literally as thus alleged, they significantly suggest the inference that the money was advanced by the defendant for the accommodation of the plaintiff in his purchase of the land, and the deed given to the defendant for his security therefor; but that it was agreed between them that the plaintiff should retain no legal right of redemption. He was to trust himself wholly to the good faith and forbearance of the defendant.

It is alleged in the bill, and not denied in the answer, that the land has been all the time in the occupation of the plaintiff. We think it is also to be inferred that the land is of considerably greater value than the sum advanced by the defendant.

From the whole case we are satisfied that it was a transaction between borrower and lender, and not a real purchase of the land by the defendant. We are brought, then, to the question, Can equity relieve in such a case?

The decisions in the courts of the United States, and the opinions declared by its judges, are uniform in favor of the existence of the power, and the propriety of its exercise by a court of chancery. *Hughes* v. *Edwards*, 9 Wheat. 489. *Sprigg* v. *Bank of Mount Pleasant*, 14 Pet. 201, 208. *Morris* v. *Nixon*, 1 How. 118. *Russell* v. *Southard*, 12 How. 139. *Taylor* v. *Luther*, 2 Sumner, 228. *Flagg* v. *Mann*, Ib. 486. *Jenkins* v. *Eldredge*, 3 Story, 181. *Bentley* v. *Phelps*, 2 Woodb. & Min. 426. *Wyman* v. *Bab-*

*cock*, 2 Curtis C. C. 386, 398; *S. C.* 19 How. 289. Although not bound by the authority of the courts of the United States, in a matter of this sort, still we deem it to be important that uniformity of interpretation and administration of both law and equity should prevail in the state and federal courts. We are disposed therefore to yield much deference to the decisions above referred to, and to follow them, unless we can see that they are not supported by sound principles of jurisprudence, or that they conflict with rules of law already settled by the decisions of our own courts.

We cannot concur in the doctrine advanced in some of the cases, that the subsequent attempt to retain the property, and refusal to permit it to be redeemed, constitute a fraud and breach of trust, which affords ground of jurisdiction and judicial interference. There can be no fraud or legal wrong in the breach of a trust from which the statute withholds the right of judicial recognition. Such conduct may sometimes appear to relate back, and give character to the original transaction, by showing, in that, an express intent to deceive and defraud. But ordinarily it will not be connected with the original transaction otherwise than constructively, or as involved in it as its legitimate consequence and natural fruit. In this aspect only can we regard it in the present case.

The decisions in the federal courts go to the full extent of affording relief, even in the absence of proof of express deceit or fraudulent purpose at the time of taking the deed, and although the instrument of defeasance " be omitted by design upon mutual confidence between the parties." In *Russell* v. *Southard*, 12 How. 139, 148, it is declared to be the doctrine of the court, " that, when it is alleged and proved that a loan on security was really intended, and the defendant sets up the loan as payment of purchase money, and the conveyance as a sale, both fraud and a vice in the consideration are sufficiently averred and proved to require a court of equity to hold the transaction to be a mortgage." The conclusion of the court was, " that the transaction was in substance a loan of money upon security of the farm, and, being so, a court of equity is bound to look through the forms in which the

contrivance of the lender has enveloped it, and declare the conveyance of the land to be a mortgage."

This doctrine is analogous, if not identical with that which has so frequently been acted upon as to have become a general if not universal rule, in regard to conveyances of land where provision for reconveyance is made in the same or some contemporaneous instrument. In such cases, however carefully and explicitly the writings are made to set forth a sale with an agreement for repurchase, and to cut off and renounce all right of redemption or reconveyance otherwise, most courts have allowed parol evidence of the real nature of the transaction to be given, and, upon proof that the transaction was really and essentially upon the footing of a loan of money, or an advance for the accommodation of the grantor, have construed the instruments as constituting a mortgage ; holding that any clause or stipulation therein, which purports to deprive the borrower of his equitable rights of redemption, is oppressive, against the policy of the law, and to be set aside by the courts as void. 4 Kent Com. (6th ed.) 159. Cruise Dig. (Greenl. ed.) tit. xv., *c.* 1, § 21. 2 Washb. Real Prop. (3d ed.) 42. Williams on Real Prop. 353. Story Eq. § 1019. Adams Eq. 112. 3 Lead. Cas. in Eq. (3d Am. ed.) White & Tudor's notes to *Thornbrough* v. *Baker*, pp. 605 [* 874] *&* *seq.* ; Hare & Wallace's notes to *S. C.* pp. 624 [* 894] *&* *seq.*

The rule has been frequently recognized in Massachusetts, where, until 1855, the courts have held their jurisdiction of foreclosure and redemption of mortgages to be limited to cases of a defeasance contained in the deed or some other instrument under seal. *Erskine* v. *Townsend*, 2 Mass. 493. *Killeran* v. *Brown*, 1 Mass. 443. *Taylor* v. *Weld*, 5 Mass. 109. *Carey* v. *Rawson*, 2 Mass. 159. *Parks* v. *Hall*, 2 Pick. 206, 211. *Rice* v. *Rice*, 4 Pick. 349. *Flagg* v. *Mann*, 14 Pick. 467, 478. *Eaton* v. *Green*, 22 Pick. 526. The case of *Flagg* v. *Mann* is explicit, not only upon the authority of the court thus to deal with the written instruments of the parties, but also upon the point of the competency of parol testimony to establish the facts by which to control their operation ; although, upon consideration of the parol testimony in that case, the court came to the conclusion that there was a sale in fact, and not a mere security for a loan.

By the St. of 1855, *c.* 194, § 1, jurisdiction was given to this court in equity " in all cases of fraud, and of conveyances or transfers of real estate in the nature of mortgages." Gen. Sts. *c.* 113, § 2. The authority of the courts, under this clause, is ample. It is limited only by those considerations which guide courts of full chancery powers in the exercise of all those powers.

If then the advantage taken of the borrower by the lender, in requiring of him an agreement that he will forego all right of redemption in case of non-payment at the stipulated time, or an absolute deed with a bond or certificate back, which falsely recites the character of the transaction, representing it to be a sale of the land with a privilege of repurchase, be a sufficient ground for interference in equity by restricting the operation of the deed, and converting the writings into a mortgage, contrary to the expressed agreement, it is difficult to see why the court may not and ought not to interpose to defeat the same wrong, when it attempts to reach its object by the simpler process of an absolute deed alone. In each case the relief is contrary to the terms of the written agreement. In one case it is against the express words of the instrument or clause relied on as a defeasance, on the ground that those words are falsely written as a cover for the wrong practised, or an evasion of the right of redemption. In the other it is without an instrument or clause of defeasance, on the ground that it was oppressive and wrongful to withhold or omit the formal defeasance. In strictness, there is no defeasance in either case. The wrong on the part of the lender or grantor, which gives the court its power over his deed, is the same in both. " For they who take a conveyance as a mortgage without any defeasance are guilty of a fraud." *Cotterell* v. *Purchase*, Cas. temp. Talbot, 61. See also *Barnhart* v. *Greenshields*, 9 Moore P. C. 18, *Baker* v. *Wind*, 1 Ves. Sen. 160 ; *Mellor* v. *Lees*, 2 Atk. 494 ; *Williams* v. *Owen*, 5 Myl. & Cr. 303 ; *Lincoln* v. *Wright*, 4 De Gex & Jones, 16.

As a question of evidence, the principle is the same. In either case the parol evidence is admitted, not to vary, add to or contradict the writings, but to establish the fact of an inherent fault in the transaction or its consideration, which affords ground for

avoiding the effect of the writings, by restricting their operation, or defeating them altogether. This is a general principle of evidence, well established and recognized both at law and in equity. *Stackpole* v. *Arnold*, 11 Mass. 27. *Fletcher* v. *Willard*, 14 Pick. 464. 1 Greenl. Ev. § 284. Perry on Trusts, § 226.

The reasons for extending the doctrine, in equity, to absolute deeds, where there is no provision for reconveyance, are ably presented by Hare & Wallace in their notes to *Woollam* v. *Hearn*, 2 Lead. Cas. in Eq. (3d Am. ed.) 676, and to *Thornbrough* v. *Baker*, 3 Ib. 624. See also Adams Eq. 111; 1 Sugd. Vend. (8th Am. ed.) Perkins's notes, pp. 267, 268, 302, 303. The doctrine thus extended is declared, in numerous decisions, to prevail in New York; also in Vermont and several other states. Mr. Washburn, in his chapter on Mortgages, § 1, has exhibited the law as held in the different states, in this particular; and the numerous references there made, as well as by the annotators in the other treatises which we have cited, render it superfluous to repeat them here. 2 Washb. Real Prop. (3d ed.) 35 *& seq.*

Upon the whole, we are convinced that the doctrine may be adopted without violation of the statute of frauds, or of any principle of law or evidence ; and, if properly guarded in administration, may prove a sound and salutary principle of equity jurisprudence. It is a power to be exercised with the utmost caution, and only when the grounds of interference are fully made out, so as to be clear from doubt.

It is not enough that the relation of borrower and lender, or debtor and creditor, existed at the time the transaction was entered upon. Negotiations, begun with a view to a loan or security for a debt, may fairly terminate in a sale of the property originally proposed for security. And if, without fraud, oppression, or unfair advantage taken, a sale is the real result, and not a form adopted as a cover or pretext, it should be sustained by the court. It is to the determination of this question that the parol evidence is mainly directed.

The chief inquiry is, in most cases, whether a debt was created by the transaction, or an existing debt, which formed or entered into the consideration, continued and kept alive afterwards. " If

the purchaser, instead of taking the risk of the subject of the contract on himself, take a security for repayment of the principal, that will vitiate the transaction, and render it a mortgage security." 1 Sugd. Vend. (8th Am. ed.) 302, in support of which the citations by Mr. Perkins are numerous. But any recognition of the debt as still subsisting, if clearly established, is equally efficacious; as the receipt or demand of interest or part payment. *Eaton* v. *Green*, 22 Pick. 526, 530.

Although proof of the existence and continuance of the debt, for which the conveyance was made, if not decisive of the character of the transaction as a mortgage, is most influential to that effect, yet the absence of such proof is far from being conclusive to the contrary. *Rice* v. *Rice*, 4 Pick. 349. *Flagg* v. *Mann*, 14 Pick. 467, 478. *Russell* v. *Southard*, 12 How. 139. *Brown* v. *Dewey*, 1 Sandf. Ch. 56. When it is considered that the inquiry itself is supposed to be made necessary by the adoption of forms and outward appearance differing from the reality, it is hardly reasonable that the absence of an actual debt, manifested by a written acknowledgment or an express promise to pay, should be regarded as of more significance than the absence of a formal defeasance. It of course compels the party attempting to impeach the deed to make out his proofs by other and less decisive means. But as an affirmative proposition it cannot have much force.

A mortgage may exist without any debt or other personal liability of the mortgagor. If there is a large margin between the debt or sum advanced and the value of the land conveyed, that of itself is an assurance of payment stronger than any promise or bond of a necessitous borrower or debtor. Hence inadequacy of price, in such case, becomes an important element in establishing the character of the transaction. Inadequacy of price, though not of itself alone sufficient ground to set in motion chancery powers of the court, may nevertheless properly be effective to quicken their exercise, where other sufficient ground exists; Story Eq. §§ 239, 245, 246; and in connection with other evidence may afford strong ground of inference that the transaction purporting to be a sale was not fairly and in reality so. Kerr on Fraud and Mistake, 186 and note. *Wharf* v. *Howell*, 5 Binn. 499

Another circumstance, that may and ought to have much weight, is the continuance of the grantor in the use and occupation of the land as owner, after the apparent sale and conveyance. *Cotterell* v. *Purchase*, Cas. temp. Talbot, 61. *Lincoln* v. *Wright*, 4 De Gex & Jones, 16.

These several considerations have more or less weight, according to the circumstances of each case. *Conway* v. *Alexander*, 7 Cranch, 218. *Bentley* v. *Phelps*, 2 Woodb. & Min. 426. It is not necessary that all should concur to the same result in any case. Each case must be determined upon its own special facts; but those should be of clear and decisive import.

In the present case, we are able to arrive at the clear and satisfactory conclusion that there was no real purchase of the land by the defendant, either from Tirrill or from the plaintiff; that his advance of the purchase money at the request of the plaintiff created a debt upon an implied assumpsit, if there was no express promise; and that it was the expectation of both parties that the money would be repaid soon and the land reconveyed. Whatever may have been the intention of the defendant, he must have known that this was the expectation of the plaintiff; and it is most favorable to him to suppose that it was his own expectation also. These conclusions are not in the least modified in his favor by an examination of his answer.

We must declare therefore that in equity he holds the title subject to redemption by the plaintiff in such manner and upon such terms as shall be determined upon a hearing therefor before a single justice. *Decree accordingly.*