SETH STINCHFIELD in equity *vs.* ELIAS MILLIKEN and another.

Washington.   Opinion December 31, 1880.

*Equity.  Equitable Mortgage.  Evidence.  Deed.  Chancery powers.  Stat. 1874, c. 175.  Fixtures.  Insurance by Mortgagee.  Redemption — a bill to redeem premature if brought before debt is due.  Waiver.*

The defendants received title to lands by absolute deeds from third parties by the procurement of the complainant, the consideration therefor coming mostly from the complainant.  The defendants gave a written promise, not under seal, to convey to complainant when he paid his notes given to them.  This transaction constitutes an equitable mortgage.

When it is clear that the intention is to take an absolute conveyance as a security for a debt, the transaction is in equity a mortgage.  That intention may be shown by parol or written evidence.  The existence of a debt is a well nigh infallible evidence of it.

In equity, a mortgage is not prevented because the conveyance does not come from the equitable mortgager.  It is sufficient that the debtor, having an interest in the property conveyed, either legal or equitable, procures the conveyance to be made.

Since the act of 1874, conferring general chancery powers, this court is authorized to declare an absolute deed to be a mortgage, allowing the equitable mortgager the right to redeem.  The jurisdiction is exercised upon the ground that, to take an absolute conveyance as a mortgage without any defeasance, is in equity a fraud.

Certain mill fixtures, which were afterwards incorporated into the real estate, were mortgaged as personal property to secure the same debt the deeds were taken to secure.

*Held*, that the complainant can redeem from the whole or none; he has no right to separate the transaction.

In computing the amount due under an equitable mortgage, where the mortgagee collects an insurance on the property insured in his own name, he must account for the proceeds, if he insures the property upon the authority and at the expense of the mortgager; but not, if he insures merely on his own account; nor if in the policy there is an agreement that the insurer shall be subrogated to the rights of the mortgagee.

A bill in equity does not lie to redeem a mortgage before the mortgage debt is due.  But when no objection is taken that the bill is premature, and the debt is overdue when the whole case is before the court for a decision upon the merits, the objection may be considered as waived.  It may be a cause for denying costs for the complainant.

BILL IN EQUITY TO REDEEM.   Heard on bill, answer and proof.

The facts appear in the opinion.

*F. A. Pike*, for the plaintiff, cited : Greenlief's note to Cruise, vol. 2, p. 74 ; *Poindexter* v. *McCannon*, 1 Dev. Eq. Rep. 373 ; *Skinner* v. *Miller*, 5 Lit. 84 ; 2 J. J. Marsh, 471 ; *Edington* v. *Harper*, 3 J. J. Marsh, 354 ; *Crane* v. *Bonnell*, 1 Green, c. 264 ; *Robertson* v. *Campbell*, 2 Call. 421 ; *King* v. *Newman*, 2 Munf. 40 ; *Prince* v. *Beardon*, 1 A. K. Marsh. 169 ; *Oldham* v. *Halley*, 2 J. J. Marsh, 114 ; *Thompson* v. *Davenport*, 1 Wash. 125 ; *Conway* v. *Alexander*, 7 Cranch, 218 ; 2 Edw. 138 ; *Flagg* v. *Mann*, 2 Sum. 533 ; *Waters* v. *Randall*, 6 Met. 479 ; *French* v. *Sturdivant*, 8 Maine, 251 ; *Kelleran* v. *Brown*, 4 Mass. 443 ; *Thomaston Bank* v. *Stimpson*, 21 Maine, 195 ; *Richardson* v. *Woodbury*, 43 Maine, 211 ; *Eaton* v. *Green*, 22 Pick. 526 ; Story Eq. Jur. § 1018 ; 2 Washburn, R. P. 43.

*A. McNichol*, for the defendants.

The defendants hold the title to the real estate. They studiously avoided taking a mortgage or giving a defeasance under seal to make the transaction a mortgage. The contract given by the defendants to the plaintiff subsequent to all the other transactions did not constitute the whole transaction a mortgage at common law, which must be done before the court can apply equity. *Flint* v. *Sheldon*, 13 Mass. 443 ; *Kelleran* v. *Brown*, 4 Mass. 443 ; *Erskine* v. *Townsend*, 2 Mass. 493 ; *Gardiner* v. *Gerrish*, 23 Maine, 46 ; *Stackpole* v. *Arnold*, 11 Mass. 27 ; *Cotton* v. *McKee*, 68 Maine, 486 ; *Shaw* v. *Erskine*, 43 Maine, 371 ; *Bodwell* v. *Webster*, 13 Pick. 411 ; *Treat* v. *Strickland*, 23 Maine, 234 ; R. S., c. 90, § 1 ; *McLaughlin* v. *Randall*, 66 Maine, 226 ; *Conway* v. *Alexander*, 7 Cranch, p. 236 ; *Flagg* v. *Mann*, 14 Pick. 479, authorities cited ; *Fales* v. *Reynolds*, 14 Maine, 89 ; *Richards* v. *Smith*, 9 Gray, 315 ; *Smith* v. *Burnham*, 3 Sum. 435. Stat. 1874, c. 175, does not enlarge the equity jurisdiction of this court touching mortgages. It says : "Tenth, And shall have full equity jurisdiction according to the usage and courts of equity, *in all other cases.*" The jurisdiction of the court as to *mortgages* had previously been defined in the same section.

The steam engine and machinery became a part of the realty when placed in the mill. *Davis* v. *Buffum*, 51 Maine, 160 ; 7

Met. 40; *Symonds* v. *Harris*, 51 Maine, 14; The foreclosure of a mortgage affects the whole mortgage. *Spring* v. *Haines*, 21 Maine, 126; *Rogers* v. *Saunders*, 16 Maine, 92.

PETERS, J. The following facts are deducible from the evidence in this case: The complainant purchased of the defendants, certain steam-mill machinery, for removal from Hallowell to Danforth, in this State. There was at the time a verbal agreement, that the complainant should build a mill, and put the machinery into it, on a lot of land in Danforth, bought by him of one Russell, who was to deed the lot directly to the defendants. The complainant was also to procure a deed of his home (another) lot to the defendants from the heirs of H. E. Prentiss, who held an absolute title thereof as security for the complainant's indebtedness to them, there being a small balance only unpaid, which the defendants were to pay for him. The defendants were to give an agreement, to convey to the complainant if he paid his indebtedness to them according to the tenor of certain notes to be given.

On June 15, 1875, the complainant gave to the defendants a mortgage on the machinery as personal property to secure the notes hereafter named, in order to protect a lien thereon until the machinery should be put into the mill to be built, and become a part of the real estate. And there was embodied in this mortgage, an agreement of the complainant to build the mill and put the machinery into it. On June 16, 1875, Russell conveyed the mill lot to the defendants. On August 2, 1875, Prentiss conveyed the home lot to them, they paying the balance of the Prentiss claim. On August 4, 1875, the defendants gave a writing to the complainant, agreeing to convey the property to him upon the condition that he would pay to them his notes on one, two, three, four and five years, respectively, with interest. The notes were given for the amount payable for the machinery, the sum paid to Prentiss, and for other loans and advances. The complainant went on and erected and completed a mill on the Russell lot, and the steam mill machinery became a part of it.

The complainant seeks to redeem the property, claiming the transaction to be a mortgage. The defendants contend that the transaction was not a mortgage, that it was a conditional sale.

It was not a legal mortgage : Because the defeasance has no seal. *Warren* v. *Lovis*, 53 Maine, 463. And because the papers were not between the same parties. At law, the conveyance must be made by the mortgagor and the defeasance by the mortgagee. *Shaw* v. *Erskine*, 43 Maine, 371.

But the transaction was in equity a mortgage — an equitable mortgage. The criterion is the intention of the parties. In equity, this intention may be ascertained from all pertinent facts either within or without the written parts of the transaction. Where the intention is clear that an absolute conveyance is taken as a security for a debt, it is in equity a mortgage. No matter how much the real transaction may be covered up and disguised. The real intention governs. "If a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage." *Flagg* v. *Mann*, 2 Sum. 533.

The existence of a debt is well nigh an infallible evidence of the intention. The intention here is transparent. The defendants have a debt and held the property as a security for its collection. A legal mortgage was avoided ; an equitable mortgage was made.

Although different at law, in equity a mortgage is not prevented because the conveyance does not come from the equitable mortgager. It is sufficient that the debtor has an interest in the property conveyed, either legal or equitable. Having such an interest, if he procures a conveyance to one who advances money upon it for him, taking the property as security for the money advanced, he has a right to redeem. The grantee in such case, acquiring the title by his act, holds it as his mortgagee. Jones on Mort. 2d ed. § 331. *Stoddard* v. *Whiting*, 46 N. Y. 627 ; *Carr* v. *Carr*, 52 N. Y. 251.

It is denied that this court has the power to declare that an absolute deed shall be deemed to be a mortgage, allowing an equitable mortgager the right to redeem. At law, it has no such power. Nor, when the court had a limited jurisdiction in equity, was the doctrine admitted. It was always understood, however, that, in a case like the present, if, instead of a demurrer, an answer was filed admitting the facts alleged, the court had the

power to apply the remedy. *Thomaston Bank* v. *Stimpson*, 21 Maine, 195; *Whitney* v. *Batchelder*, 32 Maine, 313; *Howe* v. *Russell*, 36 Maine, 115; *Richardson* v. *Woodbury*, 43 Maine, 206. But since the act of 1874 conferred general chancery powers upon the court, it has full and complete jurisdiction in such cases. *Rowell* v. *Jewett*, 69 Maine, 293–303; Jones, Mort. (2d ed.) § 282.

Courts of equity generally exercise such power. While the grounds upon which the doctrine is admitted vary with different courts, there is a great concurrence of opinion as far as the result is concerned. In our judgment, it is a sound policy as well as principle to declare that, to take an absolute conveyance as a mortgage without any defeasance, is in equity a fraud. Experience shows that endless frauds and oppressions would be perpetrated under such modes, if equity could not grant relief. It is taking an agreement, in one sense, exceeding and differing from the true agreement. Instead of setting it wholly aside, equity is worked out by adapting it to the purpose originally intended. Equity allows reparation to be made by admitting a verbal defeasance to be proved. The cases which support this view are too numerous to cite. The American cases are collected in Jones, Mort. 2d ed. § 241, *et seq.* See *Campbell* v. *Dearborn*, 109 Mass. 130; and *Hassam* v. *Barrett*, 115 Mass. 256.

The complainant seeks to separate the articles originally mortgaged as personal property, and, being allowed the value of them, redeem the balance of the estate only. That would not be equitable. The personal became a part of the real as originally designed to be. It was affixed and solidly bolted thereto. The mortgage was evidently only to serve a temporary purpose. It was not just to either party that there should be two mortgages instead of one. It is urged that the defendants foreclosed the personal mortgage. It could not be done. The personal mortgage was extinguished when attempted to be done. That was but a ruse to get the possession which the defendants were entitled to. No severance was ever made or attempted to be made.

It is intimated that the mill has burned down, *pendente lite*, under an insurance obtained by the defendants, and a question

may arise, before the master, whether the complainant should have a credit of the net proceeds. If the insurance was obtained on the mortgagees' own account only, they should not be allowed. *Cushing* v. *Thompson*, 34 Maine, 496; *Pierce* v. *Faunce*, 53 Maine, 351. The head note in *Larrabee* v. *Lumbert*, 32 Maine, 97, is erroneous in that respect. It was allowed in that case by consent. *Insurance Co.* v. *Woodbury*, 45 Maine, 447.

But where a mortgagee insures the property by the authority of the mortgager, and charges him with the expense, then any insurance recovered should be accounted for. And if a mortgager covenants to insure, and fails to do so, the mortgagee can himself insure at the mortgager's expense.

One of the defendants testifies that "Stinchfield agreed to pay all taxes and insurance." He also says, "We have had the house, stable and mill insured, and have paid the insurance, $108." We think this is evidence of an insurance obtained by the mortgagees at the expense of the mortgager on account of his failure to keep his verbal covenant to insure, and renders it proper that the net proceeds of any insurance obtained should be allowed in the settlement between them.

But this cannot be, if the insurance was collected under a policy in which it is agreed between the insured and insurer that the company in case of loss should be subrogated to the right of the mortgagee. For in such case the insurance is not in fact on the mortgager's account, nor is it such an insurance as could be made available to him. Jones, Mort. (2d ed.) § 420, and cases in note.

The complainant may redeem the whole property upon payment of whatever may be due upon the whole debt. Inasmuch as the complainant sets up a claim exceeding the equitable right, neither party to recover costs up to the entry of this order; and whether future costs shall be recovered by either side, to be reserved for decision when the proceedings are to be finally terminated. Another reason why complainant should not recover costs is, that when his bill was commenced the mortgage debt was not due. The mortgage could not be redeemed until 1880. The bill was

commenced long before that time. But as the mortgage is now due, and no point is taken that the proceeding was premature, it will probably be for the interest of all the parties that their matters may be adjusted under this bill. For which purpose a master must be appointed, unless the parties can best determine the accounts between themselves.

*Decree accordingly.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.