## MARY NEALON *vs.* WALTER HENRY.

Suffolk. January 14. — April 8, 1881. COLT & FIELD, JJ., absent.

In an action on a promissory note, transferred to the plaintiff after maturity and without consideration, the following facts appeared : The consideration of the note was a conveyance, by warranty deed, of a parcel of land, of which the grantor owned only three undivided fifths, he having forged the signatures of the owners of the other two fifths. This fact was not known to the defendant until June 1877, and he soon after informed the plaintiff, the widow of the grantor, of it. In August following, a writ of entry was brought against the defendant to recover these two fifths ; the defendant notified the plaintiff, and she assumed the defence of the suit. In September 1880, the demandants recovered judgment. In December 1877, this action on the note was brought. The defendant, in January 1878, filed an answer setting up a partial failure of consideration ; and, in February 1879, filed an amended answer setting up that the note was obtained by fraud, and offering to reconvey the land. *Held,* that the judge who presided at the trial properly refused to rule, as matter of law, that the defendant had lost his right to rescind by his delay to elect so to do beyond a reasonable time after he had full knowledge of the fraud. *Held, also,* that a tender by the defendant of a quitclaim deed of all his right, title and interest in the land was sufficient in form to enable him to rescind.

MORTON, J. The note upon which the plaintiff declares in her first count was transferred to her, through a third person, by her husband James Nealon, who is the payee, without any consideration and after its maturity. It is therefore open to the same defences as if the suit had been brought by the payee.

The defence relied upon at the trial was that it was obtained by the fraud of James Nealon. The sole consideration of the note was a conveyance by him to the defendant, with full covenants of seisin and warranty, of a parcel of land in Worcester, on May 13, 1873. At the time of the conveyance, James Nealon was in fact the owner of only three undivided fifths of the land, one fifth being owned by his brother, John Nealon, and one fifth by the children of a deceased sister.

James Nealon's title was under a deed from his mother, Mary Nealon, dated February 25, 1873. Her title in fact was under a deed dated April 29, 1872, purporting to be signed by James Nealon, Ellen Nealon, John Nealon and Mary, his wife, in release of her dower. It appeared at the trial that the signatures of John Nealon and Mary, his wife, to this deed were forged by James Nealon.

The defence was that the defendant was induced to enter into the contract by the fraudulent representations of James Nealon as to his title and his fraudulent concealment of the forgery, and therefore that the defendant had the right to rescind the contract.

The principal question raised in the case is whether the defendant, by his laches or otherwise, has lost or waived his right to rescind.

A party to a contract, who has been induced by the fraud of the other party to enter into it, may upon discovery of the fraud, if he so elect, rescind the contract. The contract is not void, but voidable at his election, and he must return or offer to return the consideration received by him, so as to put the other party as nearly as practicable *in statu quo*, and must exercise his election to rescind within a reasonable time after the discovery of the fraud. *Holbrook* v. *Burt*, 22 Pick. 546. *Bassett* v. *Brown*, 105 Mass. 551. The plaintiff contends that the defendant did not exercise his election to rescind within a reasonable time.

It appears that the defendant first knew of the fraud after the death of James Nealon, which occurred in June 1877. Soon after this, John Nealon notified him that his signature was forged, and in August following he and the children of the deceased sister brought a writ of entry to recover two fifths of the land. The defendant notified the plaintiff of this suit, and she undertook the defence of it, and made some efforts to settle the claims of the demandants. The case was tried in September 1880, and resulted in a judgment for the demandants.

In the mean time, the plaintiff brought this action upon the note, by writ dated December 13, 1877, and the action was entered in court in January 1878, and was continued from term to term to await the result of the real action. The defendant filed an answer on January 25, 1878, setting up as a defence a partial failure of consideration, and making no allegations of fraud. In February 1879, he filed an amended answer, setting up that the note was obtained by fraud, and offering to reconvey the estate.

Under the circumstances of this case, we are of opinion that the Superior Court properly refused to rule, as matter of law,

that the defence of fraud was not open, because the defendant had lost his right to rescind the contract.

As we have seen, the defendant immediately gave notice to the plaintiff of the claim and suit of John Nealon. She assumed the defence of the suit. By so doing, she impliedly said to the defendant that the charge made by John Nealon that her husband was guilty of fraud and forgery was unfounded. The defendant could not know that the charge was true. So long as she continued to defend the suit and deny the fact, the defendant was not bound to accept the forgery as an established fact. Until this fact was established, either by a judgment in the real action, or by the plaintiff yielding to the claim of John Nealon, the defendant cannot be said to have had a full knowledge of all the facts which required him to elect promptly whether he would avoid the contract by reason of the fraud, or seek his remedy by recouping damages in the suit upon the note.

The fact that he had set up in his first answer the defence of a partial failure of consideration, does not conclusively show an election to waive his right to rescind, because the fact of the forgery and fraud was not then established.

Though the defendant may have believed it to be true, yet we do not think he was obliged to assume it to be true, and to act upon it as the basis of an election to rescind, so long as the plaintiff appeared to be contesting it in good faith. The delay of the defendant in electing to rescind, after he suspected the fraud, was the natural consequence of, or at least may have been caused by, the acts of the plaintiff. Under the peculiar circumstances of this case, we are of opinion that it cannot be held, as matter of law, that the defendant lost his right to rescind by his delay to elect so to do beyond a reasonable time after he had full knowledge of the fraud.

The only other question is whether the deed tendered by the defendant was sufficient.\* The court ruled that it was sufficient

---

\* The deed was in form a quitclaim of the defendant's "right, title and interest" in the land in question, with special covenants against incumbrances made or suffered by the defendant, and of warranty against all persons claiming by, through or under him. There was no evidence at the trial of the state of the defendant's title to the three fifths, or whether there were any incumbrances or liens thereon.

in form, and " was a sufficient tender, if it released the interest in the land." The meaning clearly is, that it was sufficient, if it released the interest which the defendant took from James Nealon.

This ruling was correct, as a deed of quitclaim or release conveys the estate of the grantor as effectually as a deed of warranty.                                          *Exceptions overruled.*

*J. A. Maxwell*, for the plaintiff.
*W. S. B. Hopkins*, for the defendant.

