NATHAN M. SOUTHWICK *vs.* EZRA H. BIGELOW & others.

Worcester.    October 18, 1920. — January 15, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Mortgage,* Equitable, Redemption. *Contract,* Validity. *Equity Jurisdiction,* To redeem from equitable mortgage.

The owner of a tract of timber land, two hundred forty-seven acres of which were on one side of a road and one hundred acres on the other, conveyed to a lumber-ing corporation for $10,000 all standing wood and timber on the larger tract with a right to saw and remove the timber for a period of six years and the corporation agreed with the owner in writing that for six months he was privi-leged to sell the wood and timber, with appurtenant rights, for it for $11,000 and interest, taxes and expenses. The six months having nearly passed, the owner showed his agreement to a lumberman with whom he had been nego-tiating and to whom he had offered to sell one hundred ninety-seven acres of the larger tract for $14,000, and, on the last day of the six months, the lumber-man paid to the corporation $12,000 and received from it a conveyance of the wood and timber on the larger lot and from the owner a conveyance of the fee in both lots, at the same time and as a part of the same transaction entering into an agreement in writing with the owner which purported to give to him an option to repurchase all of the property on payment within six months of $13,000 and interest on $12,000, or, during the succeeding six months, a payment of that

sum and also a further sum of $166.67 for each additional month, and that "these options [were] not to interfere with a sale to" the corporation "or representatives if made before operation." A year later, after the owner had recorded the contract with the lumberman in the appropriate registry of deeds with a *caveat,* the lumberman sold to another, for whom an examination of the records had been made, the timber on one hundred ninety-seven acres of the larger tract for $17,500, agreeing to finance the operation of the lot; and the owner brought a suit in equity against the lumberman and his grantee, alleging the sale by him to the lumberman to be an equitable mortgage, offering to pay the mortgage debt and praying for redemption. A master to whom the suit was referred found that the payment by the lumberman of $12,000 to the corporation was at the instance of the plaintiff and for his benefit; that, after the execution of the plaintiff's deed to the lumberman, the plaintiff remained in possession and control of the premises and paid taxes thereon; that the so called option agreement contemplated that in certain events like a sale to the corporation, or operation, the plaintiff was to share in the profits and get a reconveyance of the balance of the premises, and that "the price of $12,000 for three hundred and forty-seven acres wood and fee left too large a margin of profit to be a likely consideration for a *bona fide* sale between experienced lumbermen like the plaintiff and the defendants." The master concluded that the conveyance by the plaintiff to the lumberman was for security, and further found that the plaintiff agreed that the release of all his rights in the premises should become absolute in a year unless in the meantime he had entitled himself to a reconveyance by complying with the provisions of the so called option. *Held,* that

(1) The deed of the plaintiff to the lumberman and the so called option agreement constituted in equity a mortgage;

(2) The plaintiff's agreement that the release of his rights to the lumberman should become absolute if he failed to entitle himself to a reconveyance by complying with the provisions of the option, was void as against public policy;

(3) The plaintiff was entitled to redeem.

BILL IN EQUITY, filed in the Superior Court on December 7, 1918, against Ezra H. Bigelow, Walter J. Bigelow, William J. Potter, John Boulette, Joseph Charpentier and Joseph D. Nadeau, seeking an adjudication that a conveyance of certain timber land by the plaintiff to the defendants, the Bigelows and Potter, and an agreement between those defendants and the plaintiff relating in part to a repurchase by the plaintiff constituted an equitable mortgage, and that a conveyance of the timber or a part thereof by the Bigelows and Potter to the other defendants was taken by them with notice of such mortgage; and for redemption.

The agreement for repurchase by the plaintiff from the defendants, the Bigelows and Potter, was dated July 6, 1917, was under seal, and read as follows:

"Memorandum.

"Walter J. Bigelow, Ezra H. Bigelow and William J. Potter having this day purchased from Chaffee Bros. Co. the standing timber and wood on 247 acres in Sturbridge and Brook*fld* and from A. Monroe, Trustee said 247 acres on which the above stands and also about 100 acres on opposite side of road as more particularly appears from the two deeds this day recorded in Worcester Deeds, agree with Nathan M. Southwick that in case a sale shall be made to Chaffee Bros. Co. or its representatives before the said tract shall have begun to be operated, the profit over $11,325 received from said sale shall be equally divided between the three first mentioned as one half and the said Southwick as the other half, and the balance of said conveyed property shall be conveyed without charge to said Southwick.

"Said Southwick has the option to purchase all the above property and premises this day conveyed at any time during six months from date by paying the three first named $13,000 and in addition 6% x per cent. interest on $12,000 from this date. Said Southwick agrees to pay 1917 taxes.

"Said Southwick has the further option to purchase said property and premises at any time between six months and one year from date in case the option not prior exercised, by paying in addition to the above $166.67 for each additional month exceeding six months. These options not to interfere with a sale to Chaffee Bros. Co. or representatives if made before operation."

The plaintiff placed this agreement on record in the Worcester District Registry of Deeds on July 6, 1918, with the following *caveat:*

"To Whom it May Concern.

"The foregoing agreement refers to two deeds, viz: — one from Arthur Monroe, Trustee, to Walter J. Bigelow *et ali* dated July 6, 1917, recorded with Worcester District Deeds, Book 2135, Page 278, and another deed from Chaffee Bros. Co. to the same grantees dated July 6, 1917, recorded with said registry, Book 2135, Page 277.

"The above agreement was delivered by grantees in said deeds at the time of delivery of the same, to the undersigned, who was *sestui qui* trust [*sic*] of the property conveyed by the first deed aforesaid, the said deeds being given by the grantors therein at

the request of the undersigned as security for this sum of $12,000 advanced by the grantees at the request of the undersigned Nathan M. Southwick.

"Notice is hereby given that the foregoing two deeds, together with the foregoing agreement, constitute a mortgage, from which the undersigned insists upon his right to redeem the granted property.

"Witness my hand this sixth day of July 1918
                                    Nathan M. Southwick."

The bill of complaint contained the following offers:

"5. The plaintiff has, prior to the filing of this bill of complaint, offered to pay to the said Bigelows and the said Potter, and now offers to pay to them the sum of $12,000 with all interest accrued thereon, advanced and loaned by said Bigelows and said Potter as aforesaid, to and for the benefit of the plaintiff.

"The plaintiff further offers and tenders to said defendants, said Bigelows and said Potter, any and all of such sums of money as in equity or by order of the court, he ought to pay to said defendants, in satisfaction and redemption of said loan and advance made by said defendants for the benefit of the plaintiff as aforesaid, or pursuant to any obligations of the plaintiff in the premises, and for and in redemption of said wood and timber and said tracts of land, in form granted and conveyed to said defendants Bigelows and Potter, but in fact and in equity so conveyed and assigned as security as aforesaid for the said loan and advance of money made by said defendants as aforesaid for the benefit of the plaintiff."

In the Superior Court the suit was referred to a master. The master found that, at the time of the sale of timber by the defendants, the Bigelows and Potter, to the other defendants, the plaintiff had filed in the registry of deeds the *caveat* above described, and that those defendants "in their purchase had counsel — an examination of the records was made."

The master also found: "If effect can be given to the understanding and agreement between the parties entered into, on both sides, as I have found, in good faith, intelligently, without duress, accident or mistake, I find the defendants are not accountable to the plaintiff.

"But if the policy of the law does not allow effect to be given to said understanding, I find that the plaintiff is now entitled to

recover his security upon payment to the defendants, of the sum of $12,000 with interest thereon for one year at the rate of six per cent, a bonus of $2,000, 1917 taxes, if not paid, and such further sum by way of interest, taxes, etc., for the period since July 6, 1918, as the court under the circumstances may award."

Other material findings of the master are described in the opinion.

The suit was heard upon the master's report and exceptions thereto by both parties by *Shaw,* J., and by his order an interlocutory decree was entered overruling the exceptions and confirming the report, from which the defendants appealed. The suit thereupon was reported to this court for determination upon the pleadings, the master's report, the defendants' exceptions, the interlocutory decree and the defendants' appeal therefrom.

The case was submitted on briefs.

*H. Parker, E. H. Hewitt & A. Monroe,* for the plaintiff.

*W. E. Sibley, C. M. Blair & A. J. Young,* for the defendants the Bigelows and Potter.

DE COURCY, J. Previous to 1917 the plaintiff was the sole equitable owner of a tract of timber land in Brookfield and Sturbridge, comprising about two hundred and forty-seven acres north of the Joe Goddard Road, so called, and one hundred acres south of it. The legal title stood in the name of Arthur Monroe, trustee, the trust having been established to secure and protect Monroe in certain financial transactions undertaken in Southwick's behalf. On January 6, 1917, Southwick and Monroe conveyed by separate deeds to Chaffee Brothers Company, a lumbering corporation, for $10,000, all standing wood and timber on the two hundred and forty-seven acre lot, with the right to saw and remove the lumber for a period of six years from that date. On the same day Chaffee Brothers Company gave Southwick a written agreement by which, for six months from date, he was privileged to sell for them the wood and timber with appurtenant rights for $11,000 and interest, taxes and expenses. When the six months had nearly expired, without a customer being secured, Southwick undertook negotiations with the defendants, Potter and the two Bigelows, herein referred to as the defendants. First he offered to sell them one hundred and ninety-seven of the two hundred and forty-seven acres on the north side of the road for

$14,000. When this was declined, he disclosed to them the terms of the Chaffee agreement and the necessity of his acting under it on or before July 6, 1917, in order to protect his interest. As a result of the negotiations the defendants on July 6, 1917, paid $12,000 to the Chaffee Brothers Company, and received from said company a conveyance of the wood and timber on the two hundred and forty-seven acre lot. · They also received from Southwick and Monroe a conveyance of the fee in both the two hundred and forty-seven acre and the one hundred acre lots. At the same time, and as part of the same transaction, the plaintiff and the defendants entered into a written agreement which purported to give Southwick an option to repurchase all of said property on payment to them of $13,000, and interest on the $12,000, within six months; or during the succeeding six months on payment of a further sum of $166.67 for each additional month.

After July 6, 1918, the defendants, the Bigelows and Potter, sold to the other defendants the timber on one hundred and ninety-seven acres north of the road for $17,500, agreeing to finance the operation of the lot. Thereupon the plaintiff brought this bill to redeem, contending that said deed and written agreement constituted an equitable mortgage of his property.

The controlling question is, was the transaction between the parties a real purchase of the land by the defendants, with an option of repurchase; or was the conveyance received by the defendants as security for a loan made by them to the plaintiff? The finding of the master is, in substance, that the conveyance was really given for security. This conclusion is supported by his other findings, among which are the following: The payment by the defendants to the Chaffee Brothers Company of the $12,000 was made at the instance of Southwick, and for his benefit. It was improbable that he would absolutely dispose of his whole three hundred and forty-seven acres, worth much more than $12,000, to save his interest in the timber alone on two hundred and forty-seven acres, held for that amount. After the execution of the deed to the defendants, Southwick remained in possession and control of the premises, and paid taxes thereon. The so called option agreement contemplated that in certain events like a sale to Chaffee Brothers Company, or operation, he was to share in profits, and get a reconveyance of the balance of the premises;

and "the price of $12,000 for three hundred and forty-seven acres wood and fee left too large a margin of profit to be a likely consideration for a *bona fide* sale between experienced lumbermen like the plaintiff and the defendants."

It follows from these findings that when this transaction was entered upon the parties contemplated the payment within a year of the $12,000 advanced by the defendants, and that the deed and agreement were given as security therefor. What purported to be a sale was not one in reality. That being established as the understanding of the parties, the deed and agreement, taken together, constitute in equity a mortgage. *Murphy* v. *Calley,* 1 Allen, 107. *Campbell* v. *Dearborn,* 109 Mass. 130. *Hassam* v. *Barrett,* 115 Mass. 256. *Burns* v. *Hunnewell,* 217 Mass. 106. This result is not prevented by the finding of the master, that Southwick agreed that the release of all his rights in the premises should become absolute in a year unless in the meantime he had entitled himself to a reconveyance by complying with the provisions of the so called option. Such an agreement to waive the right in equity to redeem the mortgage, made at the time the equitable mortgage was executed, is void as against public policy. "The reason for the rule is that improvident persons, in straits to obtain money, would be likely to make contracts, the literal enforcement of which would work great hardship upon them, to the detriment of the public as well as themselves." *Desseau* v. *Holmes,* 187 Mass. 486, 488. As was said by Shaw, C. J., in *Bayley* v. *Bailey,* 5 Gray, 505, 510: "Though it be ever so strongly expressed that the estate shall be absolute if the money is not paid at the day fixed, such stipulation would be void. It does not depend upon the intent of the parties; because it is an intent contrary to the rules of law, which the law will not carry into effect."

A decree is to be entered declaring that the defendants, the Bigelows and Potter, hold said real estate, wood and timber as equitable mortgagees; and ordering them to reconvey and release the same (subject to the stipulation filed in the suit) upon the payment by the plaintiff of the amount found due from him on an accounting between the parties.

*Decree accordingly.*