ALONZO J. SHADMAN *vs.* HARRY M. O'BRIEN & another.

Suffolk.   December 14, 1931. — March 29, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Equity Jurisdiction,* To relieve from results of fraud. *Mortgage,* Of real estate: validity, foreclosure. *Fraud.   Bills and Notes.*

Where the evidence at the hearing of a suit in equity, at which a stenographer was appointed under G. L. c. 214, § 24; Equity Rule 29 (1926), warranted findings by the judge that one of the defendants, who was the owner of a farm and was heavily indebted to the plaintiff and wished further financial assistance from him, gave the plaintiff a deed of the farm absolute in form but in reality intended only as security for what was due the plaintiff from that defendant; that the plaintiff thereupon, without consideration, gave that defendant a note secured by a mortgage upon the farm in order to protect that defendant in the event of the plaintiff's death before he should pay his indebtedness to the plaintiff; that subsequently, at a time when the plaintiff's note had been dishonored by the plaintiff's failure to pay the first instalment thereof, the defendant payee assigned it with the

mortgage securing it to the other defendant, who, even if he gave value for the assignment and was not an active participant in the defendant payee's fraud, knew that the note was dishonored; and that the defendant assignee thereafter foreclosed the mortgage, sold the farm at the foreclosure sale to the defendant payee and commenced an action against the plaintiff for a deficiency on the note, it was proper to enter a final decree declaring the note, the mortgage and the foreclosure proceedings and deed void; establishing the amount due the plaintiff from the defendant payee; and ordering a sale of the interests of all parties in the farm and the satisfaction of such indebtedness to the plaintiff from the proceeds, the plaintiff to have execution for any portion of the indebtedness not so satisfied, and any surplus over the indebtedness to be paid to the defendant assignee.

Under G. L. c. 107, § 81, the defendant assignee, by taking the note after it had been dishonored in the circumstances above described, took it subject to the equities arising in the plaintiff's favor from the fraud of the defendant payee.

BILL IN EQUITY, filed in the Superior Court on August 20, 1930, and described in the opinion.

The suit was heard by *Gray,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material evidence, and a final decree entered by order of the judge, are described in the opinion. The order for decree recited that it should be entered in accordance "with the findings of fact orally made at the conclusion of the trial." Such findings were not set forth in the record. The defendants appealed from the final decree.

*F. J. Bagocius,* for the defendants.

*L. R. Chamberlin,* (*R. J. Cook* with him,) for the plaintiff.

WAIT, J. This is a bill in equity by one who alleges himself to be mortgagee of certain premises by virtue of an absolute deed and an oral agreement for defeasance, to establish his right; determine the amount due to him; and to have declared null and void a note and mortgage given by him to the alleged mortgagor, an assignment thereof, a notice of possession taken by the assignee, and a foreclosure made by the assignee. The alleged mortgagor, who was also the purchaser at the foreclosure sale, and the assignee who foreclosed are the defendants. The case is before us upon appeal by the defendants from a decree which granted the prayers;

established the amount due and secured by the absolute deed; and made orders for a sale of the interests of the parties and a disposition of the proceeds; with costs to the plaintiff against the alleged mortgagor. The evidence is reported.

On careful consideration of the evidence, we find no error in the decision of the trial judge upon the questions of fact involved. Certain facts are undisputed. The defendant O'Brien, in 1919, purchased a farm of some thirty acres at Sharon where he planted apple trees and raised hens. He paid $5,700, which included the assumption of a mortgage. He replaced this in 1925 by a mortgage to the Federal Land Bank at Springfield for $4,500, taking also shares in that bank in accord with its practice. He and members of his family had been patients of the plaintiff, a surgeon owning and operating a private hospital near Forest Hills in Boston. He was on friendly and familiar terms with the plaintiff, who put great faith in him and wished him to succeed financially with his farm. From time to time he borrowed from the plaintiff without giving security until in 1928 he wished further help. After discussion of his needs and prospects he obtained the loan and gave the plaintiff a note secured by a second mortgage on the premises for $5,600. The finding is justified that he requested that this mortgage be not placed on record. It was not recorded. His requests for aid continued. He made no payments on his indebtedness. The plaintiff was dissatisfied. In June of 1929, when O'Brien represented that he should have an especially fine crop of apples from his young trees, he made a deed of the premises to the plaintiff subject to the mortgage to the Land Bank. A contract was signed by which he was to live upon and manage the farm. All its running expenses were to be paid by the plaintiff who was also to allow O'Brien his living from the farm free and to pay him $110 a month wages. The plaintiff gave up O'Brien's note for $5,600; he let him have $1,000; he paid $79 "adjustments" upon the transfer of title; and he gave him a note for $11,500 secured by a second mortgage of the premises which provided for payment of interest at five and a half per cent per annum payable semi-annually, and for payments of $1,500 on the principal with

each six months' interest. O'Brien contended that this transaction was a sale to the plaintiff at the latter's request for an agreed price of $22,500. The plaintiff contended, the judge found, and we agree in the finding, that this was a transfer made at O'Brien's request and solicitation as security for all that was due from O'Brien to the plaintiff, who trusted O'Brien and believed that the mortgage note, really given without consideration, and the agreement were simply means of protecting O'Brien in the event of the plaintiff's death before O'Brien harvested his crops and realized enough to pay off his indebtedness. Sometime after O'Brien obtained the note, he placed it with the State Street Trust Company, which requested payment of the interest and first instalment of $1,500 when due by the terms of the note. On receiving this demand, the plaintiff asked an explanation from O'Brien who told him to "forget it." For a time he did. Still later O'Brien, who says he was indebted to Tompkins and that Tompkins was seeking payment, assigned the note and mortgage to the defendant Tompkins as security, promising to make payment on account when the plaintiff paid an instalment. As no such payment came, Tompkins made entry to foreclose, advertised the sale for foreclosure and, in July, 1930, sold the premises by auction to O'Brien who bid $2,500 at the sale. Tompkins made a deed under the foreclosure to O'Brien, though neither claims that more than $1,000 was paid. No note or security was given for the balance. Thereafter Tompkins brought suit against the plaintiff for the $9,000 balance, in appearance, due as a deficit on the mortgage note. The plaintiff had been ignorant of the entry, the sale and the foreclosure. He then consulted a lawyer. This bill in equity followed. Neither defendant pleaded the statute of frauds.

The evidence satisfies us, as it satisfied the judge who heard and saw the witnesses and whose findings would not be set aside unless clearly wrong, *W. B. Manuf. Co.* v. *Rubenstein*, 236 Mass. 215, 219, that the plaintiff, however careless, has been the victim of misplaced confidence in O'Brien; and that Tompkins, if not an active participant in what amounts to a fraud, has no greater equity than

O'Brien. It has long been the law in this Commonwealth that equity has jurisdiction to find and declare that a deed absolute on its face is, in truth, merely a security; and to compel compliance with the real undertaking of the parties. *Campbell* v. *Dearborn,* 109 Mass. 130, and cases there cited. Equity will not interfere to do injustice and will refuse to help a party who has made such a conveyance to hinder and delay creditors. *Hassam* v. *Barrett,* 115 Mass. 256. The plaintiff here, however, is free from fault. He simply has been wonderfully careless and confiding in dealing with a supposed friend. We see no reason why the holder of such a deed is not as much entitled to the assistance of the court as the one who has made it. The jurisdiction is not based merely upon oppression by a creditor. It arises out of the situation of confidence and of *quasi* fiduciary relationship, where actual fraud is not present. See *Clark* v. *Seagraves,* 186 Mass. 430; *Cook* v. *Johnson,* 165 Mass. 245. Here no right of innocent third parties intervenes to tie the hands of the court. Tompkins, whether or not he gave value for his assignment, did not get the note until after it had been dishonored to his knowledge. The failure to pay the first instalment of $1,500 was a dishonor of the note. *Vinton* v. *King,* 4 Allen, 562. *Milliken* v. *Davis,* 267 Mass. 181. Therefore he held it subject to the equities of the prior parties. G. L. c. 107, § 81. O'Brien had no right to seek to enforce the note. He knew that he held it without consideration and on a condition which had not come into existence, i.e., the death of the plaintiff before payment by O'Brien. We need not consider whether the advertisement, which failed to set out the town in which the property was situated, was good; or whether failure to notify the mortgagor of the intended foreclosure and of the time and place of sale invalidated the foreclosure. See *Porter* v. *Porter,* 236 Mass. 422, 428. Everything done by O'Brien with note and mortgage, and by Tompkins as assignee, was vitiated by O'Brien's original wrong, — his breach of faith resulting in fraud. The decree was right in declaring the entry for possession and the deed under the foreclosure to be null and void, in enjoining further

prosecution of the action in the note, and in requiring the delivering up of the note to the plaintiff.

No argument is made that the decree is improper if, in truth and fact, the transaction of June 25, 1929, was not a genuine sale. The defendants attack the findings of fact, as they are entitled to do on this record. *Romanausky* v. *Skutulas*, 258 Mass. 190, 194. They fail. The judge found that O'Brien owes the plaintiff $10,115.80 with interest on $7,176.69 from June 25, 1929, and on the balance from the date of the filing of the bill. The decree orders a sale of the right, title, and interest of the plaintiff and of the defendants which they had in the premises at the date of the filing of the bill or may have on the day of the sale, subject to the first mortgage of the Federal Land Bank of Springfield. It orders application of the proceeds after deducting charges and expenses, including a fee to the commissioner, to the payment to the plaintiff (1) of $7,176.69 with interest from June 25, 1929, (2) of the balance then due to the plaintiff to make up the entire sum found due him from O'Brien, and (3) of any sum remaining to the defendant Tompkins. If, after such sale and distribution, there remains a balance due the plaintiff he is to have execution therefor. The defendants are ordered to make the conveyances required. and until such sale are restrained from conveying or encumbering the property. Having assumed control equity may make complete disposition with respect to the rights of the parties. This the decree does. *Holian* v. *Holian*, 265 Mass. 563, 566. *Zaff* v. *Brown*, 265 Mass. 598, 600.

*Decree affirmed with costs.*