RICHARD L. ALLEN & another vs. MUTUAL ACCEPTANCE
CORPORATION.

Worcester. February 9, 1966. — April 7, 1966.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

Real Property, Conveyance as security. Mortgage, Of real estate: equi-
table mortgage. Frauds, Statute of. Evidence, Extrinsic affecting
writing.

A transaction for an advance of money on the security of certain real
estate was shown by a deed of the property, absolute in form, to an
"acceptance corporation" and a fifteen year lease by it to the grantors
requiring them to pay it for all money "expended for the benefit of said
property" and containing an option to them to purchase the property
at the end of the term, when such documents were considered in the
light of prior discussions by the parties of such matters as "service
charges" and "charges for financing," statements in behalf of the corpo-
ration that it was making "an advance" for the grantors and would con-
vey the property back to them "whenever" they should repay the money
expended by it in their behalf "with interest and charges," the subse-
quent conduct of the parties over a period of several years, and other
provisions of the lease and circumstances implying a security trans-
action. [556]
Where it appeared that a transaction for an advance of money on the
security of certain real estate was intended by the parties to a deed of
the property absolute in form and a fifteen year lease of the property
by the grantee to the grantors containing an option to them to purchase
the property at the end of the term, and that the grantee-lessor orally
agreed to reconvey the property to the grantors-lessees "whenever" they
repaid the advance with interest and charges, enforcement of such oral
agreement was not precluded by either the statute of frauds or the parol
evidence rule. [557–558]

BILL IN EQUITY filed in the Superior Court on April 7,
1964.

The suit was referred to a master. Interlocutory decrees
overruling exceptions of the plaintiffs to the report and con-
firming it, and denying motions by the plaintiffs to recom-
mit to the master and to modify the report, were entered by
Thompson, J. The plaintiffs appealed from the interlocu-

tory decrees, and from a final decree dismissing the bill entered by *Meagher, J.*

*Gerald E. Norman* for the plaintiffs.

*Stanford L. Strogoff* for the defendant.

WHITTEMORE, J. The plaintiffs' bill of complaint sought a declaration that a deed from them to the defendant dated April 29, 1961, of real estate in Worcester and a lease of the property from the defendant to them dated May 10, 1961, containing a repurchase option were void as constituting an illegal security transaction. In their brief on their appeals from interlocutory decrees and from the final decree of the Superior Court dismissing the bill they ask that the indebtedness, if any, of the plaintiffs to the defendant under the alleged equitable mortgage be established.

A master, whose report was confirmed, concluded, inter alia, (1) that "the oral discussions and verbal agreements which took place prior to the execution of the deed and the lease were changed by both parties and their new agreement was incorporated in the provision of the lease relating to the option to repurchase"; and (2) that the deed and lease were not an equitable mortgage.

The plaintiffs contend that the subsidiary findings do not support the conclusion that the agreement had been changed from a security arrangement and that, on the contrary, they show that it had not.

Whether a deed absolute in form is an equitable mortgage depends upon the intention of the parties as shown in the circumstances of its negotiation and execution. *Campbell* v. *Dearborn,* 109 Mass. 130, 143–145. *Murley* v. *Murley,* 334 Mass. 627, 630–631.

The plaintiffs on April 10, 1961, began negotiations with the defendant's president and treasurer to obtain funds to pay arrearages on two mortgages on their house at 5 Hartshorn Avenue, Worcester, and to pay other obligations. The unpaid balance on the first mortgage was $12,976.07, and on the second mortgage, $3,265.85. There were several other liens. Foreclosure of the second mortgage had begun. In the course of several conferences the terms and

conditions of a proposed loan were discussed. Later the defendant's officer told the plaintiffs that "an advance would be made . . . [to pay] the arrear payments . . . [on the two mortgages] and to take care of other small obligations . . ., that the . . . [defendant] would assume both mortgages and continue to make payments . . . [to the mortgagees] on the condition that the plaintiffs transfer [the property] by deed . . . [and that the defendant] would lease to the plaintiff for a term of years the entire premises consisting of the two apartments at fixed rental. During some of the discussions and conferences . . . [the defendant] informed the plaintiffs orally that it would reconvey the premises . . . whenever the plaintiffs were able to repay . . . the money that . . . [the defendant] would pay out in the plaintiffs' behalf. Service charges were also discussed and later incorporated in a lease."

The deed of April 29, 1961, recites that "[t]he consideration for this conveyance is such that no revenue stamps are required." The fair market value of the premises at the time of conveyance was $18,500. The lease of May 10, 1961, was for a term of fifteen years and specified rent of $40 a week for the first fifty-two weeks, and $45 a week for the remaining 728 weeks "for a total rental of . . . $34,840." The lessees were given the option "to purchase . . . at the conclusion of the term of the lease for the price of $2,000" provided all the terms of the lease had been complied with "and, in addition thereto shall pay the lessor for all taxes, water, insurance and any other monies expended for the benefit of said property."

Between April 29, 1961, and May 10, 1961, the parties again on several occasions discussed the terms and conditions and on each occasion the defendant agreed to reconvey the premises "whenever the plaintiffs repaid . . . the money . . . [the defendant] would expend in their behalf together with interest and charges for financing the transaction."

Between May 10, 1961, and February, 1964, the parties had several conferences in which the plaintiffs were told

"any time they wanted to pay off their indebtedness . . . [the defendant] would reconvey the premises to them. In 1962, the plaintiffs requested and received . . . a pay-off figure, but because both parties could not agree upon a tax item . . . the money due to the . . . [defendant] was not paid and the parties continued under the arrangements entered into in April and May of 1961."

On February 27, and again on March 10, 1964, while in arrears on monthly payments, the plaintiffs in writing demanded an itemized statement of moneys owed and indicated they were ready and willing to make payment. The defendant did not reply and on March 11, 1964, began eviction proceedings. The plaintiffs then owed $960 under the lease. The eviction proceedings were still pending when the report was filed.

From May 1, 1961, to June 8, 1964, the defendant "paid out for and in behalf of the plaintiffs" $8,840.09, and received under the lease $5,695, "leaving a balance due . . . [of] $3,145.09" not including the $2,000 repurchase figure. The expenditures by the defendant included $567.75 paid to the plaintiffs or their counsel in 1961. Also the defendant paid the monthly instalments to the first and second mortgagees. The defendant "verbally assumed and continued to make monthly payments" to the first mortgagee and on July 5, 1961, guaranteed the balance of payments then due on the second mortgage. The plaintiffs to June, 1964, paid the water, insurance and repair bills as provided in the lease.

We are of the opinion that at all times the transaction was for an advance on the security of the real estate. The plaintiffs sought a loan. The defendant, when it specified the deed and lease, said it was making "an advance" and that upon repayment it would reconvey. The character of the transaction was reiterated after the deed had been given and before the lease (to complete the formal embodiment of the transaction) was signed. The "charges for financing the transaction" then specified, like the "service charges" discussed before the deed was given, strongly imply that loaning on security was the dominant intent.

The provisions of the lease (the fifteen year term; the total rent specified in one figure, that is, $34,840; the agreement to reconvey property worth $18,500 for $2,000 plus all moneys "expended for the benefit of said property") are unusual for a lease, and imply a security transaction. The intention of the parties when the documents were executed is of course determinative, but the consistent conduct of both parties thereafter in negotiating for repayment to the defendant is confirmatory of the original intention of an advance on security. *Murley* v. *Murley,* 334 Mass. 627, 631, and cases cited.

None of the subsidiary facts shows any change in this intent. On the contrary the finding that the service charges discussed before the deed was given were "later incorporated in . . . [the] lease" tends to show no change in intention to make an advance on security. There may be implicit in the master's conclusion that "the oral discussions and verbal agreements . . . were changed" a finding that the original intent was to embody the transaction in a note and mortgage. Disregarding the absence of any subsidiary finding to this effect, and assuming that there was such a change, it was a change as to the form only and not as to the substance of the transaction.

The subsidiary findings, including in particular the finding that the service charges were embodied in the lease, indicate that the defendant, having determined what it should have in total sum for mortgages assumed, money advanced, interest, financing and service charges for a loan for fifteen years, specified lease terms that would give it this sum.

The master's conclusion that the plaintiffs clearly understood the nature of the transaction embodied in the deed and lease and agreed to all the terms is justified on the subsidiary findings including the finding that they had respectively considerable business and law office experience. The issue, however, is whether the plaintiffs can enforce the oral undertaking accompanying the intended deed and lease to reconvey before the expiration of the term of the lease on payment of the defendant's advances and its

charges. We think the primary character of the transaction as one of security for an advance determines that they can do so under the principle applied in *Murley* v. *Murley,* 334 Mass. 627, 630–631. A sale and the lease of real estate not being the dominant intent, neither the statute of frauds nor the parol evidence rule bars enforcing the oral commitment. *Campbell* v. *Dearborn,* 109 Mass. 130, 142–143. *Jennings* v. *Demmon,* 194 Mass. 108, 112. *Sears* v. *Gilman,* 199 Mass. 384, 392–393.

The case of *Jacobson* v. *Jacobson,* 334 Mass. 658, relied on by the defendant, is not inconsistent with our conclusion. That case recognizes the principle, which we now apply, that the intention of the parties is determinative, and holds that the judge's finding that the parties intended what the deed specified, that is, an absolute conveyance with an option to repurchase, was not plainly wrong. Such similarities as there are between the facts of that case and of this one do not require the same conclusion on the facts now before us.

The plaintiffs are entitled to have determined: (1) so far as not already found, the terms of the agreement for reconveyance prior to the expiration of the fifteen year lease; and (2) the amount due to the defendant under that agreement, and legally recoverable, including appropriate provision in respect of any future mortgage payments assumed by the defendant and not yet due.

The plaintiffs' exceptions to the master's conclusions that "the oral discussions and verbal agreements . . . were changed" and that the deed and lease did not constitute an equitable mortgage are to be sustained. These conclusions were plainly wrong on the subsidiary facts. *Spencer* v. *Rabidou,* 340 Mass. 91, 92. The interlocutory decree confirming the master's report is to be modified accordingly and as so modified is affirmed. The decrees denying motions to recommit and modify the reports are affirmed. The final decree is reversed. The case is to be remanded to the Superior Court for determination by a judge or a master of (1) so far as not already found, the terms of the

agreement for reconveyance prior to the expiration of the fifteen year lease; and (2) the amount required to be paid to the defendant by the plaintiffs to redeem their real estate from the equitable mortgage. The temporary injunction in respect of the eviction proceedings is to be continued until the expiration of a reasonable time, as determined by the final decree, for redemption payment.

*So ordered.*