ITEN N. FALES vs. JOSEPH G. GLASS, individually and as trustee, & others.

Dukes County. February 15, 1980. — April 15, 1980.

Present: HALE, C.J., GRANT, & NOLAN, JJ.

*Real Property*, Conveyance as security. *Deed*. *Mortgage*, Real estate: equitable mortgage. *Laches*.

In an action to determine title to an undivided one-half interest in real estate, there was sufficient evidence to warrant findings that a deed which was absolute on its face was intended as a mortgage and that the mortgagor's subsequent quitclaim deed to the plaintiff conveyed to her his equity of redemption. [573-574]

In an action to determine title to an undivided one-half interest in real estate, the judge did not err in finding that the action was not barred by laches even though the plaintiff commenced the action some eleven years after learning that the defendant had executed a trust instrument purportedly conveying the one-half interest where none of the trust beneficiaries were prejudiced by the delay. [574]

In an action to determine the title to an undivided one-half interest in real estate, the judge did not err in refusing to deny the plaintiff relief on the ground of the plaintiff's alleged inequitable conduct. [575]

CIVIL ACTION commenced in the Land Court on February 18, 1976.

The case was heard by *Sullivan, J.*

*Robert J. Muldoon, Jr.* for the defendants.

*John F. Adkins* (*Nicholas M. Kelley* with him) for the plaintiff.

GRANT, J. This is an action brought in the Land Court to remove a cloud on and quiet the title to some forty-five acres of land (with the buildings thereon) lying in West Tisbury. G. L. c. 240, §§ 1 and 6. The plaintiff holds the record title to and is the undisputed beneficial owner of an undivided one-half interest in the land. She claims to be the beneficial owner of the other undivided one-half interest, the record

title to which is in the defendant Joseph G. Glass (Glass) as trustee. The other defendants are the successor trustee and the four children of the plaintiff, who are named as the beneficiaries under the trust instrument hereinafter referred to. The defendants have appealed from a judgment which declares that the plaintiff is the beneficial owner of the disputed one-half interest and which, in effect, orders Glass to give the plaintiff a release deed to that interest. The case is before us on all the evidence, including the exhibits. The following is a summary of the facts found by the judge and of certain additional facts found by us on undisputed evidence. *Ollson* v. *Waite,* 373 Mass. 517, 520 (1977). *Steranko* v. *Inforex, Inc.,* 8 Mass. App. Ct. 523, 531 (1979).

The plaintiff and Albert L. Scott (Scott) were married in 1940 or 1941. Scott purchased the property in 1946, taking title in his name alone. In 1954 he conveyed the property to himself and the plaintiff as "joint tenants." The two lived on the property with their children from 1946 until 1956. In 1956 Scott left the family and moved to New York city, where he remained until 1959. He contributed regularly to the support of his family during 1956 and 1957, but his contributions became irregular in 1958. In July of that year the plaintiff secured a separate support order from the Probate Court for the County of Dukes County. Scott was soon in arrears under the order. Acting on the advice of her then counsel (the first in a long succession of counsel), the plaintiff secured an execution in the sum of $570 and a special precept for the attachment of Scott's right, title and interest in the property. A deputy sheriff levied on that interest and advertised it for sale on October 17, 1959.

Glass is a member of the New York bar with whom Scott became acquainted in 1956. Scott did not have enough money to save his interest in the property from being sold and consulted Glass, to whom he was then indebted for legal services in an amount in excess of $7,000. Scott told Glass he would have no objection if he (Glass) were to attend the execution sale and bid on his (Scott's) interest in the prop-

erty. Scott executed a power of attorney authorizing Glass to act for him in all matters pertaining to the sale.

Glass appeared at the time and place appointed for the sale, where he identified himself as Scott's attorney and exhibited his power of attorney to the deputy sheriff who was to conduct the sale. The plaintiff had no money and could not bid above the amount of the execution. Glass, using his own money, bid Scott's interest in for the total sum of $786.19, of which $570 was paid to the plaintiff and $97.39 was retained by the deputy for his fees and expenses. Glass receipted for the remaining $118.80 under his power of attorney. The sheriff's deed of Scott's undivided one-half interest ran to Glass alone and was subsequently recorded by him.

Glass's name was promptly substituted for that of Scott on a policy of insurance covering the property. Glass allowed the plaintiff to install tenants in the property; he insisted on approving leases of the property but refused to become a party to any of the leases. He allowed the plaintiff to retain all the rents received but insisted that she pay all the taxes and other expenses. On at least two occasions the plaintiff spoke to Glass about either conveying to her or placing the property in trust for her children. Glass consistently took the position that he could not make any commitment concerning the property without first contacting Scott. In late 1960 Glass told the plaintiff's then counsel that he considered himself both the legal and the equitable owner of the property because of Scott's failure to pay his debt for legal services but that he was willing to convey for the amount of the debt.

In 1960 Scott, who had by then moved to Puerto Rico, instituted divorce proceedings against the plaintiff. In 1961, as part of the divorce settlement, Scott gave the plaintiff a quitclaim deed of "all [his] right, title and interest" in the property and the buildings thereon. That deed was promptly recorded. Glass was informed of the deed by Scott and shortly thereafter agreed to give the plaintiff a quitclaim deed once Scott should settle his indebtedness to him. Glass

informed the plaintiff he would convey to her upon the receipt of $7,700. He later increased his demand to $10,000. The plaintiff was unable to meet either demand.

Some time in early 1965 Scott settled his indebtedness to Glass, who, by an instrument dated March 8, 1965, conveyed the undivided one-half interest which stood in his name to himself as trustee for the benefit of the four children of the plaintiff and Scott.[1] Glass filed no gift tax return with respect to this transaction. For some reason never explained, the trust instrument was not recorded until November 7, 1975, approximately three months prior to the commencement of the present action. Further facts will be recited as necessary.

The judge found and concluded that the relationship between Scott and Glass at the time of the execution sale had been that of mortgagor and mortgagee under an equitable mortgage and ruled, in effect, that Scott's equity of redemption passed to the plaintiff under the 1961 quitclaim deed.[2] We agree.

1. It is settled under our law that a deed which is absolute on its face may be proven by parol to have been intended by the parties as security for a debt and that upon such proof a court of equity will treat the deed according to its true nature as a mortgage. See, *e.g., Campbell* v. *Dearborn,* 109 Mass. 130, 140-145 (1872); *Cullen* v. *Carey,* 146 Mass. 50, 52 (1888). The intentions of the parties at the time of the deed are determinative, but those intentions may be inferred from subsequent conduct. *Murley* v. *Murley,* 334 Mass. 627, 631-632 (1956). *Allen* v. *Mutual Acceptance Corp.,* 350 Mass. 553, 557 (1966). The mere fact that a creditor derives his legal title under a sheriff's deed

---

[1] In February, 1965, the plaintiff's then counsel had threatened Glass with a suit over the title to the property.

[2] The judge also found and concluded that Glass took title to the disputed one-half interest subject to a constructive trust in favor of Scott and that Scott's beneficial interest in the property passed to the plaintiff under the 1961 deed. We find it unnecessary to consider whether the judgment could also be sustained on that analysis.

rather than directly from his debtor does not preclude a finding that a given transaction was intended as an equitable mortgage. *Cullen* v. *Carey,* 146 Mass. at 52. If a deed which is absolute on its face is found to have been intended as a mortgage, the debtor is entitled to a reconveyance upon repayment of the debt secured by the deed, so long as the rights of innocent third parties have not intervened. See, *e.g., Southwick* v. *Bigelow,* 237 Mass. 299, 305 (1921); *Shadman* v. *O'Brien,* 278 Mass. 579, 583 (1932).

The defendants have argued that Scott's interest in the property could not pass to the plaintiff under the 1961 quit-claim deed. The essential predicate of the decision in *Pond* v. *Eddy,* 113 Mass. 149, 150 (1873), is that a debtor's equity of redemption under an equitable mortgage can be conveyed by him. It is settled that a debtor under an express mortgage can convey his equity of redemption by a quit-claim deed. *Perry* v. *Hayward,* 12 Cush. 344, 348-349 (1853). There is no reason in law or logic for supposing that a debtor under an equitable mortgage must use some other form of conveyance to accomplish the same purpose (see *Hooper* v. *Reid,* 211 Ala. 451, 453 [1924]; *Hill* v. *Day,* 231 Ark. 550, 554 [1960]; Osborne, Mortgages § 247 [2d ed. 1970]) or for taking this case out of the rule that a quitclaim deed is sufficient to convey all the grantor's right, title and interest in and to the property described in the deed. G. L. c. 183, § 2. *Nealon* v. *Henry,* 131 Mass. 153, 155-156 (1881). *Mansfield* v. *Dyer,* 131 Mass. 200, 201 (1881).

2. Although the execution sale took place in 1959 and although the plaintiff learned of the existence and general terms of the Glass trust instrument shortly after its execution in 1965, she did not commence the present action until February of 1976. All the defendants who answered the complaint pleaded laches.[3] On the record, the only defendant who could conceivably advance any claim of prejudice aris-

---

[3] The plaintiff's daughter Margaret Scott Hammond was served with process but filed no appearance or answer. The plaintiff called her as a rebuttal witness at trial.

ing out of the delay in bringing the action (see *Alvord* v. *Bicknell*, 280 Mass. 567, 572 [1932]; *Moseley* v. *Briggs Realty Co.*, 320 Mass. 278, 283 [1946]; *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 278 [1970]; *Erickson* v. *Waltham*, 2 Mass. App. Ct. 436, 450-451 [1974]) is the plaintiff's daughter Abigail Hart Scott Higgins (Abigail), who, together with her husband, built a house on the property some time after the execution of the trust instrument. The plaintiff's present husband contributed $10,000 toward the cost of constructing the house. Abigail knew that the plaintiff held the record title to nothing more than an undivided one-half interest in the property and could hardly have supposed that her mother's remarriage had improved her chances of inheritance.[4] More to the point, Abigail testified on cross-examination that she had not relied on the Glass trust instrument in accepting the $10,000 gift. The judge was clearly correct in refusing to find laches on the part of the plaintiff.

3. All the defendants who answered the complaint asserted, in effect, that the plaintiff had been guilty of unclean hands. The judge made no reference to those assertions in her written decision. Her entry of judgment in favor of the plaintiff indicates that she found no merit to the contention. Compare *Berry* v. *Nardozzi*, 362 Mass. 145, 150 (1972). The only evidence of supposedly inequitable conduct now relied on by the defendants consists of three statements in letters to certain of the defendants which tended to show that the plaintiff recognized some measure of validity to Glass's claim of title. As the defendants concede in their brief, the question whether to deny relief on the basis of the plaintiff's conduct was a matter committed to the broad discretion of the judge. *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Mach. Co.*, 324 U.S. 806, 815 (1945). There was no abuse of discretion.

*Judgment affirmed.*

---

[4] There was evidence that the plaintiff's present husband has spent about $50,000 in improvements to the main house on the property.